# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Leroy JONES, Attorney at Law.

Supreme Court

*No. 89-1033-D. Submitted on briefs January 25, 1991.—Decided March 20, 1991.*

(Also reported in 466 N.W.2d 890.)

ABRAHAMSON, STEINMETZ and BABLITCH, JJ., dissent.

For the Board of Attorneys Professional Responsibility there was a brief by *Kitty K. Brennan* and *Murphy & Brennan,* South Milwaukee.

For the respondent there was a brief by *Robert Silverstein* and *Robert Silverstein & Associates, S.C.* and *Gerald P. Boyle* and *Gerald P. Boyle, S.C.,* all of Milwaukee.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

The Board of Attorneys Professional Responsibility (Board) appealed from the referee's recommendation of discipline to be imposed for the professional misconduct of Attorney Leroy Jones. That misconduct consisted of his neglect of a client's real estate matter, his mishandling of client funds and his failure to timely and fully respond and provide information and records to the Board in the course of its investigation into his misconduct. As discipline for that misconduct, the referee recommended that the court impose a 60-day suspension of Attorney Jones' license to practice law but stay that suspension for two years, during which time the Board and an accountant would monitor Attorney Jones' continued compliance with the Rules of Professional Con-

duct for Attorneys governing the use of client trust accounts and the receipt and disbursement of client funds.

In this appeal, the Board took the position that the recommended discipline is an insufficient response to the nature and number of Attorney Jones' violations of the professional conduct rules and their continuation over a period of three years. Moreover, the Board noted, Attorney Jones was publicly reprimanded in 1984 for failing to cooperate with the Board in its investigation, misconduct for which he is to be disciplined again in this proceeding.

We determine that the recommended stayed license suspension, with the imposition of conditions related to the management of client trust funds and client trust accounts, is insufficient discipline and that the seriousness of Attorney Jones' professional misconduct warrants a brief license suspension. That recommendation was based on the following factors the referee deemed mitigating the seriousness of the misconduct: Attorney Jones' lack of knowledge of bookkeeping and elementary accounting procedures, the confusion of his files and records, his lack of capable secretarial assistance and the disproportionate amount of time he spent on pro bono work in his community. While those factors mitigate the seriousness of Attorney Jones' violations of the court's trust account rules and his mishandling of client funds, they do not lessen the seriousness of his other misconduct.

Further, the recommended conditions are responsive to only the portion of Attorney Jones' misconduct that involved his mishandling of trust accounts and client funds in his possession; they do not address his neglect of a client's real estate matter or his recurrent failure to respond appropriately to the Board in the course of its

566

investigation. The totality of Attorney Jones' misconduct, considered in conjunction with the mitigating factors, warrants the suspension of his license to practice law for the minimum period—60 days. It is unnecessary to impose conditions directed to Attorney Jones' maintenance of client trust accounts and his handling of client funds in accordance with our rules; we expect the license suspension will be sufficient to effectuate the necessary changes in Attorney Jones' professional conduct and ensure his proper handling of trust accounts and client funds in the future. Indeed, the record reflects that he has already taken steps to obtain needed assistance.

Attorney Jones was licensed to practice law in Wisconsin in 1972 and practices in Milwaukee. In 1984 the Board publicly reprimanded him for failing to cooperate in its investigation into allegations of his professional misconduct. The referee is Attorney Stewart Honeck.

In the course of the proceeding, Attorney Jones stipulated with the Board that he had engaged in the following professional misconduct.

(1) In September, 1986, Attorney Jones represented a man in the sale of his home. Although he told the seller and buyer he could represent only one of them, they agreed that each would pay one-half of his $500 fee. Upon signing the offer to purchase, the buyer gave Attorney Jones $17,000, together with $250 as one-half of his fee. One week after receiving the $17,000, Attorney Jones opened a savings trust account at his bank and deposited the money into it. One month later he withdrew the $17,000, plus $90 interest, and deposited it into his general trust account at the same bank.

After he ordered a title insurance commitment and requested the real estate tax bill for the property, the sale was closed and Attorney Jones disbursed $12,229 to the

seller and $249 to the buyer. One month later, Attorney Lawrence Willenson wrote to Attorney Jones that he now represented the buyer and the seller and asked him to account for the undisbursed $4,612 and other funds.

On December 29, 1986 and January 14, 1987, Attorney Jones made additional disbursements totaling $5,585.48, including a $250 payment to himself as attorney fees, payment of a water and sewer liability and payment for the title policy. When he improperly disbursed $2,787.53 in payment of the balance of the mortgage on the property, the mortgagee returned the check to him. On January 26, 1987, Attorney Willenson wrote to Attorney Jones again asking for an accounting of the unaccounted for $2,787.53 and other monies.

One month later, the title insurance company wrote Attorney Jones that the deed to the property had not been recorded and asked for a status report. After Attorney Jones sent him a deed and real estate transfer tax return on March 9, 1987, Attorney Willenson told him the register of deeds office had rejected the tax form because it was outdated and the absence of a notary seal affixed to Attorney Jones' signature on the deed and other imperfections in the deed and transfer tax return prevented the recording of the deed. Attorney Jones sent Attorney Willenson a properly prepared deed on March 30, 1987. The following month, Attorney Willenson filed an action in circuit court on behalf of the buyer alleging, among other things, that Attorney Jones failed to disburse all of the money due the buyer and failed to record the buyer's deed. In his answer to the complaint in that action, Attorney Jones stated his willingness to pay the $2,787.53 into the court. Ultimately, in December, 1987, he paid the buyer in full.

Attorney Willenson contacted the Board of Attorneys Professional Responsibility, alleging that Attorney

Jones had neglected the real estate matter. On December 19, 1986, the Board sent Attorney Jones a copy of Attorney Willenson's grievance and requested his response within 20 days. When he did not respond within that time, the Board sent him a certified letter requesting his response. When Attorney Jones did not respond in the time provided, the Board again wrote to him, notifying him that he was in default and requesting that he deliver his trust account records to the Board by February 23, 1987. On February 18, 1987, Attorney Jones called the Board and promised to respond by February 25, 1987, on which date he delivered to the Board a copy of his file in the real estate matter but did not provide a written response to the grievance or his trust account records. He did tell Board staff he would submit a written response and his trust account records the next day, but he did not do so.

On March 3, 1987, Attorney Jones submitted his written response concerning the real estate matter. On March 10, 1987 and again on April 1, 1987, the Board asked him for his trust account records and other account information. Attorney Jones gave a written response to the Board on April 20, 1987 but did not deliver his trust account records. The Board again asked him for the records and advised him that he had five days to respond. Attorney Jones did not respond and on June 10, 1987 the Board sent him a notice to appear before the Board on June 24. Attorney Jones appeared at the Board's offices on that date and asked for an adjournment because of another matter he had scheduled. He appeared on the adjourned date but produced only a portion of his records.

On January 20, 1988, the Board asked Attorney Jones for additional bank records. After granting him a week's extension to produce those records, the Board

again asked him to produce them, to which Attorney Jones made a partial response and requested an additional extension. Attorney Jones provided some additional records but did not submit all of those the Board requested.

(2) Attorney Jones commingled funds belonging to his clients with his personal funds. In April, 1986, he left in his client trust account $481.25 in fees owed to him as part of a client's personal injury settlement and later used those funds to make improper disbursements.

Between April 1, 1987 and June 30, 1988, he failed to withdraw $3,134 in fees from another client trust account, $50 of which amount had been a direct payment of attorney fees which he deposited into the trust account. During that time, Attorney Jones failed to pay clients a total of $669.06 owing to them from that account.

In February, 1987, Attorney Jones closed one of his trust accounts, withdrawing the $1,651.81 balance. At the time of that withdrawal, his clients were owed funds from that account totaling $3,301.18, with the result that the account had a shortage of $1,649.37.

In March, 1987, Attorney Jones deposited into his personal account $130 of rents he had been collecting for a client and disbursed it for his own personal purposes. He made deposits into that personal account and disbursements from it with client funds.

(3) Beginning in August, 1984, Attorney Jones agreed to collect rents for a client. Based on his incomplete records, it appeared he collected $4,600 in rents during the time covered by the Board's audit—January 31, 1986 to June 30, 1988. Of that amount, the client was due $3,964 but Attorney Jones actually paid the client only $2,784, $1,180 less than he was owed.

(4) During the period January 31, 1986 to February 13, 1987, Attorney Jones deposited into a trust account $15,000 in fees he had earned in a client's worker compensation case. He subsequently withdrew $9,800 of those fees, leaving $5,200, which he used to make disbursements to clients who did not have funds on deposit in that account. During the month prior to the $15,000 deposit, the account had $881 less on deposit than the amount due to clients. Subsequently, from October, 1986 to February, 1987, that account had insufficient funds on deposit to cover obligations owed to clients. Those shortages ranged from $524 to $1,650.

When Attorney Jones closed that account, withdrawing the $1,652 balance, he deposited $330 of it into a personal account he opened. None of his subsequent disbursements of the balance related to any of the clients to whom money was owing. Attorney Jones never accounted for the remaining $1,322 in trust funds he had withdrawn when he closed the trust account.

(5) Attorney Jones opened another trust account on April 7, 1987, but it was not an IOLTA account required by the Supreme Court Rules. From February 29, 1988 to June 30, 1988, that account had insufficient funds to cover obligations owed to clients, with shortages ranging from $422 to $1,659.

(6) During the period of the Board's audit, Attorney Jones consistently failed to maintain trust account records for his two trust accounts or for his personal account. The few records he retained were incomplete and insufficient and consisted of bank records and some client files. He did not maintain individual ledger sheets for each client or any other documents to keep track of the receipt and disbursement of client funds and did not keep trust fund checkbooks and stubs, bank statements, vouchers or canceled checks or his own account books.

The referee accepted these facts to which the parties had stipulated but made no conclusions of law in respect of them. In his report, the referee explicitly rejected the conclusions the Board had proposed, namely, that Attorney Jones had neglected the client's real estate matter, in violation of SCR 20.32(3);[1] failed to cooperate with the Board during its investigation, in violation of SCR 21.03(4)[2] and 22.07(2) and (3);[3] commingled clients'

---

[1]SCR 20.32 provides: "**Failing to act competently.** A lawyer may not: . . . (3) Neglect a legal matter entrusted to the lawyer."

The current equivalent provision, SCR 20:1.3, provides: "**Diligence** A lawyer shall act with reasonable diligence and promptness in representing a client."

[2]SCR 21.03 provides:

**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[3]SCR 22.07 provides:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant

money with his own, in violation of SCR 11.05(1)[4] and 20.50(1);[5] failed to promptly pay or deliver money owing

information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

[4]SCR 11.05 provides:

**Trust accounts required.** (1) A member of the state bar shall not commingle the money or other property of a client with his or her own, and he or she shall promptly report to the client the receipt by him or her of all money and other property belonging to the client. Unless the client otherwise directs in writing, whenever an attorney collects any sum of money upon any action, claim or proceeding, either by way of settlement or after trial or hearing, he or she shall promptly deposit his or her client's funds in a bank, trust company, credit union or savings and loan association, authorized to do business in this state, in an account separate from his or her own account and clearly designated as "Clients' Funds Account" or "Trust Funds Account," or words of similar import. The attorney, with the written consent of the client, may deposit the client's funds in a segregated client's trust account with all interest accruing thereon to the client. Unless the client otherwise directs in writing, securities of a client in bearer form shall be kept by the attorney in a safe deposit box at a bank, trust company, credit union or savings and loan association authorized to do business in this state, which safe deposit box shall be clearly designated as "Clients' Account" or "Trust Account," or words of similar import, and be separate from the attorney's own safe deposit box.

[5]SCR 20.50 provides:

**Preserving identity of funds and property of a client.** (1) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm may be deposited in such an account except as follows:
 (a) Funds reasonably sufficient to pay bank charges may be deposited in the account.
 (b) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited in the account, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to

573

to a client, in violation of SCR 20:50(2);[6] converted money of one client to another client and failed to have sufficient funds in his various accounts to cover obligations to clients and at other times disbursed client money to himself, all of which constituted gross negligence to the degree of dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4);[7] failed to maintain an IOLTA account, in violation of SCR 13.04;[8]

receive it is disputed by the client, in which event the disputed portion may not be withdrawn until the dispute is finally resolved.

[6]SCR 20.50 provides:

**Preserving identity of funds and property of a client.**

. . .

(2) A lawyer shall:

(a) Promptly notify a client of the receipt of the client's funds, securities or other properties.

(b) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(c) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

(d) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

[7]SCR 20.04 provides: " **Misconduct.** A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The current equivalent provision, SCR 20:8.4 provides: " **Misconduct** It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[8]SCR 13.04 provides:

**Attorney participation in the program.** (1) An attorney shall participate in the program as provided in SCR 20:1.15 unless:

(a) The attorney certifies on the annual trust account statement filed with the state bar that:

1. Based on the attorney's current annual trust account experi-

failed to maintain trust account records, in violation of SCR 11.05, Chapter 13 and 21.05(2);[9] failed to deposit client funds in a properly designated account, in violation of SCR 11.05(1).

The referee's refusal to reach the conclusions of law proposed by the Board was based on his assessment of the extent to which Attorney Jones' lack of knowledge of bookkeeping and accounting and other factors contributed to his misconduct. Further, the referee emphasized that there was no evidence that Attorney Jones intended to deprive clients of their funds or to misappropriate client funds to his own use. In this regard, the referee specifically found that Attorney Jones' violations of the rules concerning the handling of client trust funds were unintentional and resulted from a combination of the following: his lack of knowledge of bookkeeping or ele-

ence and information from the institution in which the attorney deposits trust funds, service charges on the account would equal or exceed any interest generated; or

 2. Because of the nature of the attorney's practice, the attorney does not maintain a trust account; or

 (b) The board, on its own motion or upon application from an attorney, grants a waiver from participation in the program for good cause.

 (2) The board may reimburse an attorney incurring service charges on an account established under SCR 20:1.15(c)(1) if the charges were reasonably and necessarily related to the attorney's participation in the program.

 (3) Refusal or neglect by an attorney to participate in the program, except as provided under sub. (1), constitutes professional misconduct and may be grounds for disciplinary action under the rules governing enforcement of attorneys professional responsibility.

[9]SCR 21.05 provides:

**Grounds for discipline.** An attorney is subject to discipline for misconduct. Misconduct is conduct that violates:

 (1) A criminal statute if the violation involves moral turpitude.

 (2) A statute, court rule or court order regulating the conduct of attorneys, including SCR 11.01.

mentary accounting procedures, the confusion of his files and records, his secretary's total lack of knowledge of bookkeeping and accounting, the dishonest actions of one of Attorney Jones' secretaries, who took approximately $4,000 of funds belonging to clients and removed some of Attorney Jones' files to conceal that theft, the problems inherent in a sole practitioner's practice and the disproportionate amount of time Attorney Jones spent in pro bono work in his community. The referee further found that Attorney Jones has made restitution of all monies due to his clients and has established a client trust account in accordance with our rules and otherwise is in compliance with the rules concerning the handling of client trust funds.

In addition, the referee gave considerable weight to the testimony of five character witnesses who appeared in the proceeding. Those witnesses—two circuit judges, a law school dean, a retired police officer and a minister—testified to Attorney Jones' good character and extensive work in his personal and professional capacities to assist people in his community who are unable to afford legal counsel or other assistance to resolve their problems.

Because he found that Attorney Jones had no intent to withhold client funds or convert them to his own use and that his mishandling of client funds was the result of his lack of knowledge of bookkeeping and accounting, the referee rejected the Board's position that a six-month license suspension was appropriate discipline for his misconduct. Rather, the referee recommended a 60-day suspension, stayed for a period of two years, during which time Attorney Jones would be required to comply with the following conditions: maintenance of a bookkeeping system of client accounts in strict conformity

with the court's rules, a semi-annual review by an accountant of Attorney Jones' practices with respect to the handling of client funds, with submission of the accountant's opinion to the Board following each review, and designation of a member of the State Bar to report to the Board quarterly concerning Attorney Jones' compliance with the conditions. In the event Attorney Jones failed to comply with these conditions, the 60-day license suspension would be imposed forthwith.

Notwithstanding Attorney Jones' commendable dedication to his community and the great amount of time and effort he has spent helping others without remuneration, we are unable to accept the referee's recommendation for discipline. While Attorney Jones' lack of intent to misappropriate client funds prevents his misappropriations from rising to the level of conduct involving dishonesty or fraud, his lack of knowledge of accounting and bookkeeping does not excuse his mishandling of client funds. As an attorney licensed to practice law in Wisconsin, Attorney Jones is charged with knowing his professional obligations and is accountable in the event he fails to meet them. His lack of knowledge or skill in meeting those obligations may affect the degree of accountability to which he will be held but cannot absolve him of it.

While his accounting and bookkeeping deficiencies may have caused some of the errors he made in paying funds to his clients, Attorney Jones' handling of his personal and trust accounts and his deposits and disbursements of client funds evinced a lack of understanding of the fiduciary obligations he owed to clients, as well as a disregard of his clients' interests. Likewise, the fact that Attorney Jones' files were in disarray and his accounts were muddled does not excuse his neglect of his client's real estate matter or his failure to timely respond to

inquiries from the Board concerning that client's griev-
ance and matters uncovered in the Board's audit of his
accounts.

Attorney Jones' mishandling of funds his clients
had entrusted to him had serious repercussions to his
clients. At the time of the hearing in this proceeding,
two years after the Board had begun its investigation,
his clients were owed more than $2,500. His delay in
responding and providing information to the Board
delayed the return of those funds to the clients.

Attorney Jones' failure to timely and fully cooperate
with the Board in its investigation is itself serious, as he
had previously been disciplined for like misconduct in
another matter. As the Board noted in this appeal, his
failure to timely cooperate in this proceeding extended
over a considerable period and included a two month
delay in telephoning the Board in response to its initial
inquiry, three months to draft a written response, seven
months to produce some of his records and one and one-
half years to produce the rest. By his failure to timely
and fully respond, Attorney Jones failed to meet his pro-
fessional responsibility to cooperate with the court's dis-
ciplinary authority and, in so doing, ignored the interests
of his clients in receiving what was rightfully theirs.

In recommending discipline for Attorney Jones, the
referee likened this case to *Disciplinary Proceedings
Against Fay*, 123 Wis. 2d 73, 365 N.W.2d 13 (1985). In
*Fay*, the attorney's alcoholism was found to have been a
cause of his neglect of a client matter and a misrepresen-
tation and at the time of the hearing in the matter, the
attorney had established his rehabilitation from alcohol-
ism for a period of two years. As discipline for the mis-
conduct, the court imposed a 60-day license suspension
and stayed that suspension for two years, imposing on
the attorney's continued practice of law during that time

conditions designed to ensure his continued rehabilitation from alcoholism.

Unlike the attorney in *Fay*, Attorney Jones had not cured the serious defects in his accounting practices and apparently would not have done so if the Board had not intervened. Moreover, Attorney Jones did not suffer a debilitating medical condition which impaired his ability to comprehend and comport with his professional obligations. There is no ongoing condition here, medical or otherwise, that requires monitoring.

On the basis of the facts stipulated by the parties, we conclude that Attorney Jones violated the rules of professional conduct set forth above, with the exception of the rule proscribing conduct involving dishonesty, fraud, deceit or misrepresentation. We determine that a suspension of Attorney Jones' license to practice law is appropriate discipline to be imposed for his misconduct, not only for his improper handling of client funds and trust accounts, but also for his neglect of a client's legal matter and his repeated failure to respond to the Board during its investigation. In view of the mitigating factors, the license suspension we impose is of the minimum duration.

IT IS ORDERED that the license of Leroy Jones to practice law in Wisconsin is suspended for a period of 60 days, commencing May 6, 1991.

IT IS FURTHER ORDERED that within six months of the date of this order Leroy Jones pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Leroy Jones to practice

579

law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Leroy Jones comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I agree that Attorney Jones neglected a client's legal matter and improperly handled client funds and trust accounts. Moreover, even after a public reprimand in 1984 for failing to cooperate in the Board's investigation, Attorney Jones failed to cooperate with the Board in this investigation. The referee, the majority and I agree that despite mitigating circumstances, Attorney Jones must be disciplined for his second violation of the Rules of Professional Conduct for Attorneys.

Referee Honeck crafted a discipline fitting for this case, taking into account the misconduct, the mitigating circumstances, the well-being of Attorney Jones' clients, and the public interest. In my opinion the referee's recommendation is a constructive proposal that both protects the public and helps Attorney Jones improve his lawyering skills. Because I believe suspending Attorney Jones for 60 days would serve only a punitive purpose, I would adopt the referee's recommendation.

I am authorized to state that Justice Donald W. Steinmetz and Justice William A. Bablitch join in this dissent.