In the Matter of Disciplinary Proceedings Against Walter A. Paget, Attorney at Law:

Office of Lawyer Regulation, Complainant-Appellant,

v.

Walter A. Paget, Respondent-Respondent.

Supreme Court

*No. 01–2614–D. Submitted on briefs February 18, 2003.—Decided April 29, 2003.*

2003 WI 26

(Also reported in 660 N.W.2d 255.)

604

 

For the complainant-appellant there were briefs by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy & Haas, LLP,* Edgerton.

For the respondent-respondent there was a brief by *David A. Saichek* and *Saichek Law Offices, S.C.,* Milwaukee.

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) has appealed from the findings of fact, conclusions of law, and recommendation of the referee that Attorney Walter A. Paget did not engage in professional misconduct with regard to client funds.

¶ 2. We agree with the referee's recommendation and adopt the findings of fact, conclusions of law, and discussion in his report.

¶ 3. Paget was licensed to practice law in Wisconsin in 1992. His license was administratively suspended on June 9, 1999, for failure to comply with Continuing Legal Education (CLE) requirements and he has not practiced since. Prior to that, on May 29, 1998, he consented to the imposition of a private reprimand for having knowingly engaged in the practice of law while his license was suspended for a period during 1997, again for a CLE violation.

¶ 4. The present case involves an OLR complaint against Paget on October 1, 2001, claiming that he (1)

accepted money specifically intended for client restitution and failed to hold that money in a trust account in violation of SCR 20:1.15(a);[1] and (2) failed to deliver the money for restitution in violation of SCR 20:1.15(b).[2]

[1] SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[2] SCR 20:1.15(b) provides:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled

Paget admitted many of the factual allegations of the complaint but denied any misconduct.

¶ 5. The complaint arises out of Paget's representation of Enrique Baez on a theft charge and an accompanying probation revocation that was later dropped. There is no documentation concerning Paget's representation of Baez, specifically how attorney's fees would be paid. However, Baez periodically paid Paget, by cash and money orders, an amount that Baez believes was approximately $2400. Paget claims the amount was only approximately $1600. Baez claims that approximately $845 of the amount he paid Paget was intended to be held by Paget in trust for the purpose of paying the approximately $3600 restitution for the theft when that eventually would be ordered. Paget denies this and maintains that all payments he received from Baez were solely for the purpose of attorney's fees. Once again, there is no documentary evidence of any of this. Paget did maintain a trust account but never deposited anything received from Baez into it.

¶ 6. Aside from Baez, who testified at the OLR hearing, the only documentary evidence in support of his claim consisted of the following.

¶ 7. First, a log kept by the Department of Corrections (DOC) concerning Baez contained an entry for April 15, 1997, (Baez had pled guilty on February 10, 1997) that stated in part:

> Contacted D's lawyer to verify D has been making payments toward Sears; attorney states he has $700 fm. D; attorney states he's attempted to contact D.A. in order to find out who/where the restitution needs to be forwarded.

to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

Paget testified that he did have a telephone conversation with the DOC probation and parole agent but denies that he said that he was holding money. Rather, Paget testified that he told the agent that Baez had merely told him that Baez had raised the $700 toward restitution and it was not actually in Paget's hands.

¶ 8. Second, on April 22, 1997, Paget, appearing on behalf of Baez at sentencing, argued in Milwaukee County Circuit Court:

> [I]nsofar as the restitution, Baez has given me since the plea date $845 to apply toward restitution. I have attempted to contact the State to get those funds in the proper hands, but we ended up voicemailing each other to go nowhere. I'm prepared today to write a check out of my cost account for $845 to get this restitution rolling.

Paget admitted making this statement but still insisted he never had any money from Baez for restitution. Rather, he claims he merely made the statement to "protect the interest" of his client. Paget believes he easily could have obtained the funds from Baez had the court so ordered and therefore it was not "misleading" the court by suggesting that the funds were already in Paget's hands. Paget noted that the court eventually refused the offer to pay on the spot and thereafter Paget refused Baez's offer to him to "save" money for him. Paget says he told Baez to keep the money himself until the full amount of the restitution could be raised.

¶ 9. The referee, Michael Ash, found in general that "[v]irtually all the facts concerning Paget's representation of Baez, and Baez's payments to Paget, are unclear and uncertain." The referee considered Paget an "impressive . . . honest and candid" witness on direct examination with "no special axe to grind." However, the referee viewed him as "defensive and evasive" on

cross-examination. On balance, the referee character-ized Baez as a "fairly strong witness" for OLR but "not necessarily one whose every word I would be inclined to credit." In particular, the referee focused on Baez's inability to identify any specific words Paget said back to him indicating that Paget—and not just Baez—intended that some of the funds paid over were in-tended to be held for restitution.

¶ 10. The referee did not directly comment on Paget's credibility. However, the referee acknowledged that the DOC log "raises questions" and concluded that Paget's denial that he made the statement to the DOC agent "does not completely dispel" those questions. But the referee indicated that the DOC agent's inability to recall the conversation made it "difficult to disbelieve Paget's version."

¶ 11. The referee further acknowledged the diffi-culty with Paget's statement in court, Paget's explana-tion for which the referee did not consider "completely convincing." Yet the referee concluded that he could not "discredit it with confidence" and drew the conclusion that there would have been no reason for Paget to cheat his client out of the money if indeed he had just admitted in open court that he was holding the funds for restitution.

¶ 12. The referee concluded there had been no disciplinary violations:

> Although Baez may have believed that he had given Paget money for restitution, the OLR did not establish . by clear, satisfactory, and convincing evidence that Baez provided Paget with money mutually understood to have been held in trust by Paget pending the use of such funds for restitution . . . It also did not establish that he "failed to deliver" such funds in violation of SCR

20:1.15(b) . . . [Given] the complete lack of any documents or other specific information about the amounts, timing, form, nature and purpose of Baez's payments to Paget, I have concluded that Paget has not been proven to had committed misconduct.

The referee's findings of fact will be adopted unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, 248 Wis. 2d 662, 636 N.W.2d 718; *In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 562 N.W.2d 137 (1997). Where there is conflicting evidence, the referee, as the trier of fact, is the ultimate arbiter. *See In re Disciplinary Proceedings Against Camacho,* 126 Wis. 2d 104, 375 N.W.2d 204 (1985); *In re Disciplinary Proceedings Against Pump,* 120 Wis. 2d 422, 355 N.W.2d 248 (1984). We will not make a finding that the referee could have made on the evidence before him but did not. *In re Disciplinary Proceedings Against Wood,* 122 Wis. 2d 610, 363 N.W.2d 220 (1984).

¶ 13. The keys to this matter center on the impact of the DOC log entry and the court transcript, and the credibility battle between Baez and Paget.

¶ 14. Obviously the DOC log entry and the court transcript, viewed in isolation, support Baez's claim. On the other hand, Paget had an explanation for both pieces of evidence that the referee considered "difficult to disbelieve" and impossible to "discredit with confidence."

■■

¶ 15. The report does not clearly indicate whether the referee believed Paget rather than Baez or whether there was insufficient evidence to permit any finding in that regard. Either way, it is evident that the referee believed at the very least that there was no mutual understanding between Paget and Baez as to the proper

610

disposition of funds, and therefore he could not conclude that the OLR had sustained its burden to establish by clear, satisfactory, and convincing evidence that Paget had committed misconduct.

¶ 16. It is the function of the referee in these disciplinary matters to hear conflicting testimony, examine documentary evidence and reach findings that resolve disputed matters. While another trier of fact perhaps might have rendered different findings and then concluded that misconduct had occurred, we cannot hold that the referee's findings are clearly erroneous in any respect. The OLR asks us to take the referee's findings and after a de novo review conclude that misconduct occurred. We cannot do this because the present findings plainly do not support that conclusion.

¶ 17. Accordingly, we adopt the referee's report and conclude that no professional misconduct was committed in this matter.

¶ 18. IT IS ORDERED that the disciplinary proceeding is dismissed without costs to either party.

¶ 19. DAVID T. PROSSER, J. (*concurring*). I respect and appreciate the work of the court's appointed referees in the Lawyer Regulation System. Their findings of fact are entitled to great deference and should not be disturbed unless they are clearly erroneous. For the court to adopt a different standard of review would plunge us into a fact-finding role to which we are not well suited.

¶ 20. Because it is important to honor the standard of review, I concur in the decision of the court. I write separately, however, to emphasize that if I had a free hand, I would decide the case differently.

¶ 21. To me, the paper record in this case is clear. Enrique Baez was convicted of theft in February 1997. He was sentenced for the theft on April 22, 1997. He realized early on that restitution would be part of his sentence. On April 14, 1997, Baez told his probation agent that he had given money to his attorney, Walter Paget, to be applied to restitution. The agent recorded the following entry in her log: "The offender states he has been making restitution to Sears giving the payments to his lawyer who directs the money to the victim." The next day the agent contacted Attorney Paget and then reported her account of the conversation:

> Contacted [defendant's] lawyer to verify [defendant] has been making payments towards Sears; [Attorney] states he has $700 from [defendant]; [Attorney] states he's attempted to contact [district attorney] in order to find out who/where the restitution needs to be forwarded. [Defendant] stated that he also had $500 in bail that would be applied towards balance.

¶ 22. One week later, at the sentencing hearing, Attorney Paget addressed Milwaukee County Circuit Court Judge Timothy G. Dugan:

> MR. PAGET: Finally, insofar as the restitution, Mr. Baez has given me since the plea date $845 to apply towards restitution. I've attempted to contact the State to get these funds in the proper hands, but we ended up voice mailing each other to nowhere. I'm prepared today to write a check out of my cost account for $845 to get this restitution rolling.

¶ 23. There can be no dispute that Attorney Paget's statement in court acknowledges the receipt of $845 from Baez to be used for restitution. There can be no dispute that Baez's probation agent contacted Paget

a week earlier to discuss restitution and then summarized a statement that is entirely consistent with Paget's later statement in court. In addition, the record shows that Baez maintained—over a period of several years—that he paid more than $800 in restitution to Attorney Paget. He acted in conformity with that position when he filed a grievance against Paget and testified under oath in support of his grievance.

¶ 24. To defend himself, Attorney Paget was forced to do more than dispute Baez's statements. He had to repudiate his own statements affirming Baez's assertions. I find his explanations unpersuasive. If Attorney Paget never received any money from Baez for restitution, as he claims, he should never have looked a circuit judge in the eye and told him otherwise.

¶ 25. Attorney Paget prevails in the disciplinary action for the reasons stated, but the cloud over his victory may be with him for a long time.

¶ 26. I am authorized to state that Justices N. PATRICK CROOKS and DIANE S. SYKES join this opinion.