In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Ryan D. LISTER, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Ryan D. LISTER, Respondent-Appellant.

Supreme Court

*No. 2008AP2766–D. Oral argument: April 15, 2010.
—Decided September 1, 2010.*

2010 WI 108

(Also reported in 787 N.W.2d 820.)

¶ 1. PER CURIAM. Attorney Ryan Lister appeals the referee's findings, conclusions, and recommendation in this lawyer discipline matter. The referee, Richard P. Mozinski, determined the Office of Lawyer Regulation (OLR) met its burden to prove violations of duties of diligence, communication, termination of representation, and cooperation with the OLR investigation. Referee Mozinski recommends a 90–day license suspension, restitution of an unearned fee ($135.60), and costs.

¶ 2. Attorney Lister challenges the sufficiency of the evidence supporting each of the four violations. He also objects to a 90–day suspension and argues a public reprimand would be sufficient discipline. Attorney Lister does not dispute restitution and does not challenge the imposition of costs.

¶ 3. After fully reviewing the matter, we conclude the record supports the referee's findings of fact and conclusions of law. We uphold the referee's determina-

tion that Attorney Lister committed four counts of misconduct as alleged in the OLR's complaint. Under the circumstances, we reject Attorney Lister's argument that a public reprimand is sufficient discipline. We conclude his misconduct warrants a 60–day license suspension. Finally, we order that Attorney Lister pay restitution of the $135.60 unearned fee together with the costs of this proceeding.

¶ 4. Attorney Lister was licensed to practice law in Wisconsin in 1976 and has practiced in Wausau. In 1986 he was publicly reprimanded for misconduct involving neglect of legal matters, failure to carry out a contract of employment with a client, and conduct constituting misrepresentation. *See In re Disciplinary Proceedings Against Lister,* 127 Wis. 2d 453, 380 N.W.2d 370 (1986). Effective June 15, 2007, Attorney Lister's license was suspended for five months for violations involving seven separate grievance investigations. *See In re Disciplinary Proceedings Against Lister,* 2007 WI 55, 300 Wis. 2d 326, 731 N.W.2d 254. His misconduct violated his duties of competence, diligence, keeping a client informed, cooperation with an OLR investigation, candor to a tribunal, and to refund advanced fees. His misconduct also involved misrepresentation and dishonesty. *Id.,* ¶ 55.

¶ 5. The present disciplinary action arose from Attorney Lister's representation of J.H. in a federal lawsuit against Marathon County and its sheriff, relating to the jail personnel's treatment of J.H. while confined in the Marathon County jail. In 2001 J.H. had retained Attorney Lister after her arrest in Marathon County for first offense operating while intoxicated (OWI). She ultimately pled to a reduced charge of reckless driving and paid a fine. After completing his representation of J.H. in the OWI case, Attorney Lister

suggested to J.H. that she sue Marathon County regarding her treatment while in jail.

¶ 6. On May 8, 2004, J.H. signed a contingency fee agreement providing Attorney Lister's fee would amount to one-third of any recovery. J.H. paid Attorney Lister $500; he expended $364.40 for filing and postage. He did not return to J.H. the unused portion of the $500 payment.

¶ 7. On January 25, 2007, Attorney Lister filed a federal lawsuit on J.H.'s behalf but never served Marathon County or the sheriff.[1] The U.S. District Court for the Western District of Wisconsin sent Attorney Lister a notice that a telephone pretrial conference was scheduled for March 20, 2007.

¶ 8. On March 20, 2007, J.H.'s federal lawsuit was dismissed with prejudice for lack of prosecution. The dismissal order stated the plaintiff had failed to appear for the March 20, 2007, pretrial conference. At the disciplinary hearing, Attorney Lister did not dispute he failed to appear for the pretrial conference, but argued he had not received the scheduling notice. He also claimed he did not receive notice of the dismissal.

¶ 9. The referee noted that when Attorney Lister filed his pleadings in federal court, he included a postage-paid return envelope with his Wausau address. Also, Attorney Lister had admitted the notices of the scheduling conference and dismissal were mailed by the U.S. District Court for the Western District of Wisconsin. The referee found that Attorney Lister's address had not changed before March 2007. The referee found incredible Attorney Lister's assertion that he did not

---

[1] At the disciplinary hearing before the referee, Attorney Lister admitted he had "dropped the ball" and no one had been served.

receive the scheduling notice and dismissal order, given the undisputed evidence that they had been sent to Attorney Lister's law office address.

¶ 10. J.H. testified she had been unsuccessful in her repeated attempts to contact Attorney Lister regarding the status of her federal action. The first she learned of the dismissal was through Attorney Jay Kronenwetter, whom she consulted regarding her federal lawsuit. The referee found that Attorney Lister had not advised J.H. of the scheduling conference and dismissal of her federal claim with prejudice.

¶ 11. Attorney Kronenwetter testified he requested J.H.'s file in a June 15, 2007, telephone conversation with Attorney Lister. Attorney Kronenwetter said he confirmed his request by letter the same day. After receiving these requests, Attorney Lister did not call J.H. to confirm her permission to send the file. Also during the telephone conversation, Attorney Lister did not advise Attorney Kronenwetter the federal lawsuit had been dismissed. Sometime after June 15, 2007, Attorney Kronenwetter again telephoned Attorney Lister but was unable to reach him. Attorney Kronenwetter testified he was unable to leave a message because, each time he called, he received a recording that the voicemail box was full or unable to receive messages.

¶ 12. Eventually, Attorney Kronenwetter had a second telephone discussion with Attorney Lister, in which Attorney Lister promised to provide the J.H. file. When Attorney Kronenwetter eventually received J.H.'s file, it contained no indication the federal lawsuit had been dismissed. Attorney Kronenwetter testified he discovered J.H.'s lawsuit had been dismissed when he accessed the federal court's electronic docket.

¶ 13. Attorney Kronenwetter testified he received J.H.'s file in late September 2007. Attorney Lister, on

the other hand, claimed he conveyed the file by August 15, 2007. Attorney Lister claimed he did not promptly transmit the file because doing so, he believed, would have been practicing law during his license suspension. He said he sought ethics advice to determine whether he could copy and transfer the file without violating a duty not to practice law during his suspension.

¶ 14. The referee concluded the dispute over the date of delivery of the file was immaterial because Attorney Lister provided no reasonable explanation as to why it would have taken two months to transfer the file. The referee noted the supreme court rules provide a 15–day grace period to wind up a suspended attorney's practice, so Attorney Lister's claimed ethical concern was not grounded. The referee rejected Attorney Lister's explanation as not credible, noting Attorney Lister had testified he had been busy on the day Attorney Kronenwetter had requested the file.

¶ 15. The OLR also presented the testimony of Attorney Dawn Lemke, a member of the OLR District 16 investigative committee, who was assigned in May 2008 to investigate J.H.'s grievance. Attorney Lister had received and replied to various letters from the OLR during its initial investigation. Attorney Lemke testified as to her subsequent unsuccessful attempts to elicit additional information from Attorney Lister regarding the grievance. She said she left six voicemail messages on Attorney Lister's telephone answering system in June 2008. She said all of Attorney Lister's outgoing telephone messages had stated, "You have reached Lister Law Offices . . . ." Attorney Lemke was unable to reach Attorney Lister and her voice mail messages were not returned.

¶ 16. Attorney Lemke explained that on June 5, 2008, for example, she left a message identifying herself

as a member of the OLR District 16 committee investigating J.H.'s grievance. Attorney Lemke received an outgoing recorded message by Attorney Lister, stating it was May 30 and he would be back in the office on June 2. Attorney Lemke left additional messages on Attorney Lister's phone answering service on June 6, June 9, June 10, and June 11, and each time received the same recorded voice mail message.

¶ 17. Finally, on June 12, she left a sixth message. On this occasion, she received a recorded message stating Attorney Lister would be back on June 12. Attorney Lemke requested Attorney Lister return her call and advised him of her previous calls. Attorney Lemke testified she tried calling a different phone number for Attorney Lister that was noted on his letterhead but, when she called that number, she learned it had been disconnected. She received no return phone call from Attorney Lister.

¶ 18. The referee rejected Attorney Lister's explanations in defense of the four counts. With respect to Count One, the referee found Attorney Lister's testimony—that he had experienced problems with mail being received—was not persuasive or credible. The referee observed the evidence of mailing raised the rebuttable presumption that the addressee had received the letter and, once that presumption had been established, the burden shifted to the party challenging receipt to present credible evidence of non-receipt. *See American Family Mut. Ins. Co. v. Golke,* 2009 WI 81, ¶ 36, 319 Wis. 2d 397, 768 N.W.2d 729. The referee concluded Attorney Lister's testimony was not specific as to the time frame in which the federal court notification had been sent, and a bare assertion he did not receive the federal court notice was insufficient to

create credible evidence of non-receipt. As a result, the referee concluded the evidence supported Count One:

> By failing to have the defendants served in [J.H.]'s federal civil rights lawsuit and by failing to appear at a court telephonic scheduling conference on March 20, 2007, or file a preliminary pretrial conference report, all as required by the Federal District Court for the Western District of Wisconsin, [Attorney] Lister violated SCR 20:1.3.[2]

■

¶ 19. As for Count Two, the referee noted that Attorney Lister acknowledged he had been informed the federal case was assigned to a procedurally demanding judge. The referee found Attorney Lister was perpetually unavailable to J.H. and made no reasonable efforts to keep her informed of the status of her case. The referee observed Attorney Lister admitted receiving information regarding the dismissal of the case from successor counsel while it was Attorney Lister's professional duty to have the case knowledge necessary to advise J.H. of the dismissal. The referee concluded Attorney Lister failed to fulfill that duty. As a result, the referee determined:

> By his failure to inform [J.H.] that the United States District Court for the Western District of Wisconsin had dismissed her lawsuit, [Attorney] Lister violated former SCR 20:1.4(a).[3]

■

¶ 20. With respect to Count Three, the referee rejected Attorney Lister's explanation that he did not

---

[2] SCR 20:1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] Former SCR 20:1.4(a) (effective through June 30, 2007) stated, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

timely forward J.H.'s file to Attorney Kronenwetter due to ethical concerns. *See* SCR 22.26(1)(d) (providing 15 days to wind up an attorney's practice following a license suspension). The referee stated it was incumbent upon Attorney Lister to protect his client's interests by making immediate arrangements to copy the 38–page file and transmit it to Attorney Kronenwetter. Therefore, the referee concluded:

> By failing to promptly respond to numerous requests from successor counsel to forward to successor counsel the [J.H.] case file and by failing to refund to [J.H.] the unused balance of $135.60 of the $500 retainer fee previously advanced, [Attorney] Lister violated SCR 20:1.16(d).[4]

¶ 21. Additionally, the referee concluded, Attorney Lister's testimony that he was having a problem with his phone service was insufficient to provide any defense to Count Four. The referee said Attorney Lister received, or should have received, and responded to Lemke's six telephone calls regarding the grievance investigation. The referee noted that during June 2008 Attorney Lister was not suspended and was a full-time lawyer. He presented no records from his phone service demonstrating what days he had problems. The referee concluded Attorney Lister's failure to respond to

---

[4] SCR 20:1.16(d) provides as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Lemke's inquiries constituted a failure to cooperate with the District 16 investigator assigned to the grievance. The referee concluded:

> By failing to return any of the six telephone messages that OLR's District 16 Committee Investigator left for [Attorney] Lister during the period June 5, 2008 through June 12, 2008, [Attorney] Lister violated SCR 21.15(4),[5] 22.03(2),[6] and 22.04(1).[7]

¶ 22. On the basis of these findings and conclusions, Referee Mozinski concluded a 90–day suspension was warranted. He noted Attorney Lister's disciplinary

---

[5] SCR 21.15(4) states:

Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

[6] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[7] SCR 22.04(1) states:

The director may refer a matter to a district committee for assistance in the investigation. A respondent has the duty to cooperate specified in SCR 21.15(4) and 22.03(2) in respect to the district committee. The committee may subpoena and compel the production of documents specified in SCR 22.03(8) and 22.42.

history was an aggravating factor, involving essentially the same type of misconduct charged here. The referee found that Attorney Lister's misconduct caused a significant degree of emotional distress to J.H., which was evident from her testimony and demeanor. Thus, the referee concluded, Attorney Lister's misconduct resulted in harm to the client.

¶ 23. The referee observed Attorney Lister had provided some evidence of mitigating factors in the form of testimony from a professional colleague, Attorney Peter Rotter, who had shared office space with Attorney Lister for a time. Also, Attorney Lister had elicited testimony from Attorney Jay Kronenwetter that he believed Attorney Lister was concerned about practicing ethically and took his ethical duties seriously. The referee stated:

> The quandary then is how can an attorney who on the one hand exhibits a high motivation towards professional legal standards then commit repeated acts of misconduct, including those in the instant case. Part of the problem appears to be [Attorney] Lister does not appreciate the need to conform to ethics standards not strictly as he perceives them, *but as written.* The other conclusion that can be drawn is that [Attorney] Lister needs to engage in the type of legal practice that will facilitate his ability to maintain appropriate client communication and meet deadlines. This may require some significant changes in the type and number of cases [Attorney] Lister handles in the future. (Emphasis in original.)

¶ 24. Referee Mozinski observed this disciplinary matter bore similarity to *In re Disciplinary Proceedings Against Converse,* 2004 WI 10, 268 Wis. 2d 562, 675 N.W.2d 238, which imposed a 90–day suspension. The referee noted Attorney Converse had committed similar

misconduct, had a prior disciplinary history, and also had failed to cooperate with an OLR investigation. As a result, Referee Mozinski recommended Attorney Lister's license to practice law be suspended for 90 days.

¶ 25. On appeal, Attorney Lister presents two issues. First, Attorney Lister argues the OLR failed to meet its burden of proving each of the four counts. Second, he contends the sanction of a public reprimand is all that would be required to impress upon him the importance of complying with the rules of professional conduct.

¶ 26. Attorney Lister claims the referee's findings are unsupported by the record and clearly erroneous. He says his character witnesses established his dedication and strong work ethic, and his mistake in failing to serve the summons and complaint was not a failure to act with reasonable diligence. Attorney Lister says he told his client he had not done a civil rights action in a long time, did not want to do an action, and tried to find counsel to represent her. Attorney Lister explains his client had taken vacation time in California and was uncertain about filing the civil rights action. Attorney Lister contends he filed the action to protect her claim and, when he became aware of the dismissal, he advised Attorney Kronenwetter that he would assist in any way he could to reopen the case. Therefore, Attorney Lister claims the referee's finding of a lack of diligence is clearly erroneous.

¶ 27. Next, Attorney Lister argues he did not receive the federal scheduling order and the order of dismissal. He claims he is experienced in federal court matters and zealously represents his clients. Also, Attorney Lister claims, if he had received the order of dismissal, he would have moved to have the matter reopened. He says he showed full acceptance of respon-

sibility when he offered Attorney Kronenwetter assistance in reopening the matter. He claims the record establishes he did not receive the documents and, therefore, could not be faulted for failing to keep J.H. informed. As a result, he contends, he did not violate his duty to keep his client informed as alleged in Count Two.

¶ 28. Next, Attorney Lister argues that Attorney Kronenwetter's testimony that he called Attorney Lister is a physical impossibility. Attorney Lister says that around June 15, 2007, the telephone number was terminated and never reinstated. He also claims he surrendered the J.H. file to Attorney Kronenwetter as soon as reasonably practicable. In addition, he says he provided an explanation of the circumstances, offered to assist in reopening the file, and offered financial assistance to Attorney Kronenwetter. Therefore, Attorney Lister argues, the OLR failed to prove he violated his duty to a client when terminating representation, as alleged in Count Three.

¶ 29. With respect to Count Four, Attorney Lister contends no evidence indicates he hid anything from the district committee. He says his undisputed testimony was that he contacted another district committee member to see whether any additional information was needed. Attorney Lister argues the referee failed to consider his reinstatement in November of 2007, and due to tremendous financial problems, he could not hire a secretary and instead hired a telephone service. Attorney Lister claims he had numerous problems with the service; it would not accept new messages and, therefore, he was not receiving messages left for him. Attorney Lister says there came a point when he changed services and corrected the problem. Attorney Lister asserts that because he did not hide anything

from the district committee, the OLR failed to prove the violations charged in Count Four.

■■

¶ 30. We are unpersuaded. The OLR has the burden of demonstrating its allegations of misconduct by clear, satisfactory, and convincing evidence. *See* SCR 22.16(5). The referee's findings of fact will be adopted unless they are clearly erroneous. *In re Disciplinary Proceedings Against Paget,* 2003 WI 26, ¶ 12, 260 Wis. 2d 604, 660 N.W.2d 255. We review conclusions of law de novo. *In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747.

¶ 31. Attorney Lister's arguments essentially challenge the referee's assessment of weight and credibility of the testimony. He asks this court to overturn the referee's determination that his testimony in support of his defenses was neither credible nor persuasive. Attorney Lister also asks the court to make inferences opposing those drawn by the referee. For instance, he asks the court to infer from his character witnesses' testimony that because he is a zealous advocate, he could not have lacked diligence in representing J.H.

■■

¶ 32. Attorney Lister's arguments neglect the court's standard of review. An appeal from the referee's report is conducted under the rules governing civil appeals to the supreme court. SCR 22.17(3). When testimony is conflicting, the referee is the ultimate arbiter of credibility. *In re Disciplinary Proceedings Against Pump,* 120 Wis. 2d 422, 426–27, 355 N.W.2d 248 (1984). In reviewing the referee's findings of fact:

> The test for an appellate court to apply in matters of witness credibility is whether "the trier of facts could,

304

acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true."

*In re Disciplinary Proceedings Against Elverman,* 2008 WI 28, ¶ 41, 308 Wis. 2d 524, 746 N.W.2d 793. An appellate court does not substitute inferences for reasonable inferences drawn by the fact-finder. *Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). Attorney Lister has not demonstrated the referee's credibility assessments and inferences are clearly erroneous.

¶ 33. It is undisputed that Attorney Lister failed to serve the defendants in J.H.'s federal civil rights lawsuit and failed to appear at the court's telephone status conference, supporting the determination of a lack of diligence (Count One). Also, it is undisputed Attorney Lister failed to inform J.H. that her federal lawsuit was dismissed, supporting a finding that he failed to keep his client reasonably informed (Count Two).

¶ 34. In addition, Attorney Lister admits he did not transfer J.H.'s file to Attorney Kronenwetter for at least two months and does not dispute he failed to refund promptly J.H.'s unused retainer fee. As a result, the record supports a determination that Attorney Lister violated his duties upon termination of representation (Count Three). The record also shows Attorney Lister failed to return numerous telephone messages from the OLR's District 16 committee investigator, supporting the conclusion Attorney Lister failed to cooperate with the OLR investigator (Count Four). Therefore, we approve and adopt the referee's findings and conclusions that the OLR met its burden to prove the four counts of misconduct by evidence that is clear, satisfactory, and convincing.

¶ 35. Next, we consider Attorney Lister's challenge to the referee's recommendation of a 90–day suspension. While we take the referee's recommendation as to the discipline into account, we are not bound by it. *See In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, ¶ 74, 279 Wis. 2d 550, 694 N.W.2d 894. We must consider the seriousness of the misconduct, as well as the need to protect the public, courts, and legal system from repetition of misconduct and to deter attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910.

¶ 36. Attorney Lister argues Wisconsin case law does not support the referee's recommended sanction of a 90–day license suspension. Attorney Lister relies on *In re Disciplinary Proceedings Against Nussberger,* 2006 WI 111, 296 Wis. 2d 47, 719 N.W.2d 501, where the attorney advised a client to engage in activity that, if completed, could have resulted in criminal charges. A 60–day suspension was ordered. *Id.,* ¶ 2. Attorney Lister argues that none of the allegations here rise to the seriousness of the allegation of criminal activity in the *Nussberger* case. He claims his witnesses, Attorney Rotter and Attorney Kronenwetter, establish his concern with ethics and diligence. Attorney Lister says it is undisputed he zealously represents his clients. He points out the allegations in this matter arose before his previous suspension and, since his reinstatement he has practiced in a very professional and ethical manner. He claims a public reprimand, together with costs, would constitute a substantial penalty and impress upon him the need to comply with supreme court rules.

¶ 37. The OLR responds that the referee properly recommended a 90–day suspension. The OLR notes progressive discipline is endorsed by this court. *See Nussberger,* 296 Wis. 2d 47, ¶ 27. The OLR contends Attorney Lister's misconduct is aggravated, particularly in consideration of his disciplinary history. *See In re Disciplinary Proceedings Against Wells,* 2000 WI 1, ¶ 9, 231 Wis. 2d 364, 603 N.W.2d 743 (an extended pattern of professional misconduct is an aggravating factor).

¶ 38. Additionally, the OLR argues that Attorney Lister does not assume personal responsibility but blames others. The OLR says Attorney Lister's claim that his telephone service was defective was found by the referee to be incredible. The OLR contends the referee properly found Attorney Lister appears not to appreciate the need to conform to ethical rules. According to the OLR, because Attorney Lister has substantial experience and has previously violated the same ethical rules, he should have been more cautious in adhering to rules of professional conduct. The OLR contends the referee appropriately addressed the harm to J.H., who was deprived of her opportunity to pursue a federal civil rights claim, causing her emotional distress. The OLR asserts that these aggravating factors overcome any mitigating factors elicited from the testimony of colleagues regarding Attorney Lister's reputation in the legal community.

¶ 39. We reject Attorney Lister's request to limit the sanction to a public reprimand. This is Attorney Lister's third disciplinary proceeding involving similar misconduct. The referee found the misconduct caused J.H. harm and that Attorney Lister's excuses were not credible. Given Attorney Lister's disciplinary history, his pattern of similar violations, and his hesitation to accept full responsibility for his violations, we are

satisfied that a suspension is necessary to achieve the purposes of lawyer discipline.[8]

¶ 40. Attorney Lister is reminded Wisconsin adheres to the practice of progressive discipline. *See Nussberger,* 269 Wis. 2d 47, ¶ 27. Nonetheless, we do not conclude a 90–day suspension is necessary and, instead, impose a minimal suspension of 60 days. While we share the concerns expressed by the OLR and the referee, we note that each case must turn on its individual facts. We note Attorney Lister's argument that J.H.'s case arose before his previous suspension and, since his reinstatement, he has been very careful to practice ethically. Attorney Lister expresses his awareness that attorneys licensed to practice in Wisconsin are held to the highest standard of conduct and we may expect nothing less from him. We are satisfied that a 60–day license suspension, together with costs and restitution, will impress upon Attorney Lister the need to adhere to rules of professional conduct, and will deter other attorneys from engaging in misconduct.

---

[8] Contrary to Attorney Lister's suggestion, criminal activity is not a prerequisite for a 90–day suspension. *See Converse,* 268 Wis. 2d 562. Also, the endorsement of colleagues is not necessarily redeeming. Discussing lawyer discipline, the court has observed:

> The fact that a man has enjoyed a high reputation and won the confidence and trust of his clients does not excuse him, but rather makes his breach of trust the more culpable. The greater a man's ability, the larger his experience, the more clearly should he be able to see and distinguish the moral implications of a breach of his duty. So it is often said the higher a man rises the greater his fall when he yields to temptation or the pressure of circumstances.

*State v. Bradford,* 217 Wis. 389, 393, 259 N.W. 109 (1935). In addition, civic work does not necessarily warrant a lesser sanction. *See In re Disciplinary Proceedings Against Jones,* 160 Wis. 2d 564, 577, 466 N.W.2d 890 (1991).

¶ 41. On April 27, 2010, the OLR filed a statement seeking costs in the total sum of $9,250.86. Attorney Lister does not dispute the assessment of the costs and has not presented extraordinary circumstances to justify a reduction in costs. *See* SCR 22.24(1m). In addition, Attorney Lister does not object to the referee's recommendation of restitution.

¶ 42. Accordingly, we adopt the referee's recommendation that Attorney Lister pay full costs and restitution.

¶ 43. IT IS ORDERED that the license of Ryan D. Lister to practice law in Wisconsin is suspended for a period of 60 days, effective October 4, 2010.

¶ 44. IT IS FURTHER ORDERED that within 60 days of the date of this order, Ryan D. Lister shall pay restitution to J.H. in the total sum of $135.60. If the restitution is not paid within the time specified, Ryan D. Lister's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 45. IT IS FURTHER ORDERED that within 60 days of the date of this order Ryan D. Lister pay to the Office of Lawyer Regulation the costs of this proceeding in the sum of $9,250.86. If costs are not paid within the time specified and absent a showing of his inability to pay, Ryan D. Lister's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 46. IT IS FURTHER ORDERED that the restitution is to be paid in full prior to paying costs to the Office of Lawyer Regulation.

¶ 47. IT IS FURTHER ORDERED that Ryan D. Lister shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 48. ANN WALSH BRADLEY, J. (*dissenting*). Given that this is Attorney Lister's third disciplinary

proceeding involving similar misconduct, I conclude that the discipline ordered by the majority is too light. I would instead impose a 90–day suspension.

¶ 49. Referee Mozinski got it right when he recommended that this court impose a 90–day suspension of license as discipline. He weighed the credibility of the testimony presented and the arguments advanced.

¶ 50. The referee concluded that Attorney Lister had violated duties of diligence, communication, termination of representation, and cooperation with the Office of Lawyer Regulation investigation. This misconduct is similar to the misconduct for which Attorney Lister previously was disciplined by this court in 1986 and again in 2007. *See In re Disciplinary Proceedings Against Lister,* 127 Wis. 2d 453, 380 N.W.2d 370 (1986); *In re Disciplinary Proceedings Against Lister,* 2007 WI 55, 300 Wis. 2d 326, 731 N.W.2d 254.

¶ 51. The majority of the court acknowledges that Attorney Lister's misconduct caused harm to his client and that some of his excuses were not credible. Per curiam, ¶ 39. It recognizes that "Wisconsin adheres to the practice of progressive discipline." *Id,* ¶ 40. Nevertheless, it rejects the referee's recommendation and instead lessens the discipline imposed.

¶ 52. I think that the majority of the court is headed in the wrong direction. Accordingly, I respectfully dissent.

¶ 53. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.