IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Ryan D. LISTER, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Ryan D. LISTER, Respondent-Appellant.

Supreme Court

*No. 2004AP2767–D. Oral argument December 13, 2006.
—Decided May 17, 2007.*

2007 WI 55

(Also reported in 731 N.W.2d 254.)

For the respondent-appellant there were briefs by *Timothy Osicka* and *Law Offices of Tim Osicka SC,* Weston, and oral argument by *Timothy Osicka.*

For the complainant-respondent there was a brief and oral argument by *Julie M. Falk*, assistant litigation counsel.

¶ 1. PER CURIAM. Attorney Ryan D. Lister has appealed certain legal conclusions and the recommended discipline contained in the referee's report and recommendation. Having concluded that Attorney Lister had committed professional misconduct in 17 of the 18 counts charged in the complaint filed by the Office of Lawyer Regulation (OLR), the referee recommended that Attorney Lister's license to practice law in this state be suspended for a period of 180 days, that he be ordered to pay restitution to client J.A. in the amount of $12,189, and that he be assessed the costs of this proceeding.

¶ 2. After reviewing the record and considering the arguments of the parties, we adopt the referee's factual findings and conclusions of law. We determine that as a result of his professional misconduct Attorney Lister's license to practice law in this state should be suspended for a period of five months. We also determine, based upon Attorney Lister's concession at oral argument, that he should be required to pay restitution in the amount of $12,209 to client J.A.[1] Finally, we conclude that Attorney Lister should be required to pay the full costs of this disciplinary proceeding, which were $10,132.35 as of December 14, 2006.

¶ 3. On October 21, 2004, the OLR filed a complaint against Attorney Lister alleging 18 separate

---

[1] The restitution amount set forth in the referee's report, $12,189, does not correlate to the undisputed amounts of the default judgment and the monies paid by J.A. to Attorney Lister, which formed the basis of the restitution recommendation. We use the corrected amount.

counts of misconduct relating to seven separate grievance investigations. Attorney Lister's answer admitted many of the factual allegations in the OLR's complaint, but, with the exception of one count of having failed to provide a written response to a grievance, denied that he had committed any acts of professional misconduct.

¶ 4. Although Attorney Lister had admitted most of the complaint's allegations, the OLR served numerous requests to admit, which tracked the allegations of the complaint. Attorney Lister's response to these requests likewise tracked his responses to the allegations of the complaint, although his discovery response did admit at least one paragraph that he had previously denied, the impact of which is discussed further below.

¶ 5. The referee, Timothy L. Vocke, conducted a disciplinary hearing on November 21 and 22, 2005. The OLR presented testimony from four of Attorney Lister's former clients, from an opposing counsel and from Attorney Lister, adversely. Attorney Lister presented only his own testimony. At the conclusion of the evidence, the referee made oral findings of fact on the record, based on Attorney Lister's responses to the allegations of the complaint and to the OLR's requests to admit, as well as the testimony of the witnesses at the evidentiary hearing. The referee also rendered a legal conclusion of professional misconduct as to the one count that Attorney Lister had admitted in his answer. Following the production of the transcript of the hearing, the referee submitted a written report and recommendation, which set forth his conclusions of law as to the remaining counts and his recommendation as to the appropriate level of discipline. Attorney Lister subsequently filed an appeal, challenging certain legal conclusions of misconduct and the recommended level of discipline.

¶ 6. Before addressing Attorney Lister's arguments on appeal, we summarize the referee's factual findings and conclusions of law. Initially, it should be noted that in 1986 Attorney Lister was publicly reprimanded for neglecting a client matter, failing to carry out a contract of employment with a client, and misrepresenting to a client that he had taken certain actions on the client's behalf. That is the only prior disciplinary action against Attorney Lister since his admission to the practice of law in this state in 1976.

¶ 7. Count 1 of the OLR's complaint relates to Attorney Lister's representation of J.P. Attorney Lister represented J.P. in a criminal case involving allegations of sexual assault, as well as in a divorce proceeding.

¶ 8. On June 11, 2001, an assistant district attorney sent Attorney Lister a witness list in the criminal action. The list named J.P.'s son and daughter as potential witnesses.

¶ 9. On August 7, 2001, the circuit court in the divorce action held a hearing on a motion filed by Attorney Lister to review a court commissioner's decision against allowing J.P.'s son and daughter to visit their father while he was in jail. During the hearing, opposing counsel stated that he did not think it was appropriate to allow visitation while it was unclear as to whether the children would potentially be witnesses in the criminal case. In response, Attorney Lister said that he had served extensive discovery on the State in the criminal case and that "the State of Wisconsin has not listed as of this time — in 01–CF-181 they have not listed the two children ... as witnesses." Attorney Lister repeated essentially this same statement twice more. He never indicated that he was unsure of this fact or that his memory might be faulty. The circuit court

331

granted the visitation motion filed by Attorney Lister, but subsequently reversed its decision.

¶ 10. The referee concluded that these facts showed that Attorney Lister had knowingly made a false statement of fact to a tribunal, contrary to SCR 20:3.3(a)(1).[2] The referee rejected Attorney Lister's claim that he had simply made a mistake when faced with a question during the heat of the argument in a court proceeding, stating that Attorney Lister's claim lacked credibility.

¶ 11. Count 2 of the complaint related to Attorney Lister's representation of M.S., a doctor who retained Attorney Lister to represent her in an employment dispute with the Marshfield Clinic. M.S. filed a grievance with the OLR, alleging that Attorney Lister had failed to work diligently on her case and had failed to communicate with her regarding the status of the matter.

¶ 12. The OLR sent letters to Attorney Lister in September and October 2003, but did not receive any response within the time specified. Attorney Lister ultimately contacted the OLR and asked for additional time, promising to respond on at least two occasions. When Attorney Lister did not respond, the OLR was forced to file a motion seeking the temporary suspension of his license for failure to cooperate with an investigation, pursuant to SCR 22.03(4). After this court issued an order directing Attorney Lister to show cause why his license to practice law should not be suspended due to his failure to cooperate with the OLR's grievance investigation, he finally submitted a written response to the grievance. The OLR then withdrew its motion.

---

[2] SCR 20:3.3(a)(1) states that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."

¶ 13. Based on these facts and Attorney Lister's admission of misconduct, the referee found that Attorney Lister had violated SCR 22.03(2),[3] as alleged in Count 2 of the complaint.[4]

¶ 14. Client J.B. retained Attorney Lister to represent her in a pending criminal investigation. During the investigation, which was directed primarily against J.B.'s boyfriend at the time, the police searched her home and seized a number of items.

¶ 15. Attorney Lister admitted that he had agreed to assist J.B. in retrieving her property and that he had told her that he would begin a lawsuit to obtain the return of the seized items. The referee, however, found that J.B.'s testimony was confused, that the written representation agreement was limited to defending her against potential criminal charges, and that J.B.'s expectations regarding Attorney Lister's obligation to assist her in retrieving her property or pursuing a lawsuit were unrealistic in light of the written representation agreement. The referee specifically found

---

[3] SCR 22.03(2) states: Investigation.

> (2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[4] A violation of SCR 22.03(2) also constitutes a violation of SCR 20:8.4(f), which states that it is professional misconduct to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

that there was no representation agreement as to either seeking the return of the seized items that belonged to her or for a potential claim against a municipality.

¶ 16. Because the referee found that Attorney Lister had been retained for only a limited purpose, which he had accomplished, the referee concluded that Attorney Lister had not failed to keep J.B. reasonably informed about the status of the matter or respond to her requests for information, as required by SCR 20:1.4(a). The referee also noted that although J.B. had paid a $500 nonrefundable fee for this representation and Attorney Lister had earned that fee, he had refunded the entire $500 to J.B.[5]

¶ 17. In connection with Attorney Lister's representation of client W.S. in post-divorce matters, her ex-husband filed a grievance against him. The OLR requested a written response from Attorney Lister and initially granted him an extension of time to respond. Attorney Lister, however, did not respond by the extended deadline. Indeed, he did not respond even after the OLR sent and personally served additional letters requiring a written response to the grievance.

¶ 18. Attorney Lister subsequently claimed that he had sent a response, but it had been misaddressed and returned to him. During a voice mail message left by Attorney Lister for the OLR staff on March 8, 2002, he promised to send the response again with proof of the incorrect address, but did not do so. When the OLR staff called Attorney Lister prior to filing a motion for the temporary suspension of his license, he claimed that he could not have left a voice mail message on March 8, 2002, because he was in the hospital, and he denied that

---

[5] The OLR has not appealed the referee's factual findings or conclusion of no misconduct on Count 3.

the first envelope had been returned. Ultimately, however, Attorney Lister sent the OLR a letter indicating that he had been hospitalized only on March 6 and 7, 2002.

¶ 19. The referee concluded that these facts supported a finding that Attorney Lister had failed to fully and fairly disclose all facts and circumstances pertaining to alleged misconduct within 20 days after service of a request for a written response to a grievance as alleged in Count 4, in violation of SCR 22.03(2).

¶ 20. Counts 5—7 relate to Attorney Lister's representation of an auto body business owned by K.F. and L.F. concerning the business's purchase of a paint spray booth from Norad Environmental (Norad). The dispute was focused initially on the fact that Norad refused to deliver the booth because it claimed that the body shop was required to pay an additional $3000 due to requested upgrades.

¶ 21. Attorney Lister did file an action against Norad in Marathon County Circuit Court on December 15, 2000. Although Attorney Lister claims he sent the summons and complaint to a process server, ESI Associates, for service on Norad, he never obtained service.

¶ 22. On February 19, 2001, Attorney Lister left a message for K.F. and L.F. stating that he would call them after a teleconference with a judicial assistant the following morning. Attorney Lister did not call about this teleconference, despite multiple inquiries by K.F. and L.F.

¶ 23. After a scheduling conference on February 27, 2001, Attorney Lister told K.F. and L.F. that Norad was switching counsel and that he had to file another suit. On March 7, 2001, Attorney Lister informed K.F. and L.F. that he would prepare the papers to seek a prejudgment replevin. On March 8, 2001, he said that

he would file the paperwork and expected to have a replevin order the next day. On March 14, 2001, Attorney Lister stated that the Marathon County judge had signed the order and that he had called the Kenosha County sheriff about executing the writ. Attorney Lister, however, never obtained service on Norad and did not file any motion for replevin in the first action.

¶ 24. On March 26, 2001, without dismissing the first lawsuit, Attorney Lister filed a second action against Norad. He again sent the summons and complaint to ESI Associates for service on Norad. He also filed a motion for a prejudgment replevin order in the second lawsuit, which was scheduled to be heard on April 9, 2001. On that date, however, Attorney Lister told K.F. and L.F. that he would ask for a court order requiring the sheriff to accompany them to execute the replevin order allegedly issued in the first action.

¶ 25. During the April 9, 2001 hearing on the replevin motion in the second action, Attorney Lister informed the court that he had orally confirmed service on Norad, but in fact he had no documentation of service and Norad had not been served by that date. Norad did not appear for the April 9, 2006 hearing. Subsequently, the circuit court granted the motion for an order of replevin, with a requirement that K.F. and L.F. post a $30,000 surety bond. The Kenosha County Sheriff's Department executed the replevin order, but seized the wrong property from Norad.

¶ 26. On June 5, 2001, the circuit court dismissed the first action with prejudice due to failure to effect service on Norad within the required statutory time period.

¶ 27. On June 28, 2001, a representative of ESI Associates executed an affidavit stating that on June 25, 2001, ESI had personally served Norad's counsel

with the summons and complaint in the second lawsuit. ESI had not accomplished proper service within the statutory time period.

¶ 28. On July 27, 2001, Norad filed a motion to dismiss the second lawsuit on the ground that the circuit court lacked jurisdiction due to inadequate service of process. Norad also sought an order requiring the return of the seized property or the forfeiture of the surety bond. Attorney Lister failed to file a brief in opposition to Norad's motion to dismiss. According to the referee's findings, there was a factual defense to the motion to dismiss, but Attorney Lister simply missed it. Attorney Lister also failed to disclose to K.F. and L.F. that there was a motion to dismiss pending in the second action.

¶ 29. Having concluded that Norad had not been properly served in the second action, the circuit court dismissed that action on October 30, 2001. The court ordered K.F. and L.F. to return the seized spray booth immediately to Norad and to pay Norad's statutory costs. Attorney Lister did not inform K.F. and L.F. of the court's decision.

¶ 30. On December 18, 2001, Norad's counsel sent a letter to Attorney Lister asking about arrangements for the return of the spray booth and the payment of costs. Attorney Lister did not contact K.F. and L.F. about these matters. In January 2002 K.F. and L.F. discovered via a court website that the second action had been dismissed. Until that time, they had continued to believe that they would have a jury trial on their claims against Norad. Upon reviewing the case file at the courthouse, K.F. and L.F. also learned about the order to return the spray booth.

¶ 31. K.F. and L.F. then made multiple requests to Attorney Lister for their file, but did not receive the file.

On March 13, 2002, they went to Attorney Lister's office to request the file in person. After additional delay, Attorney Lister did deliver their file on March 19, 2002. Ultimately, K.F. and L.F. retained another attorney, who was able to reopen the case and proceed with their claims.

■

¶ 32. The referee concluded that Attorney Lister's failure to obtain timely service on Norad, his failure to file a brief in response to Norad's motion to dismiss, and his failure to keep his clients informed of the status of the matter, all of which led to the dismissal of the lawsuits, an order requiring K.F. and L.F. to return the spray booth to Norad and an adverse cost judgment, constituted a failure to provide competent representation, in violation of SCR 20:1.1.[6] The referee noted that Attorney Lister's claims that he has subsequently changed office policies concerning scheduling and the routing of copies to clients do not constitute a defense against this past misconduct. The referee also concluded that Attorney Lister's actions with respect to this matter showed violations of SCR 20:1.3 (failure to "act with reasonable diligence and promptness") and SCR 20:1.4(a) (failure to "keep a client reasonably informed").

¶ 33. J.A. was a landlord who retained Attorney Lister to represent her in connection with a lawsuit filed against her by a former tenant concerning J.A.'s failure to return or account for the tenant's security deposit, failure to safeguard or return the tenant's

---

[6] SCR 20:1.1 states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

personal belongings, and constructive eviction. The tenant's complaint sought double damages under Wisconsin's landlord/tenant laws. Although Attorney Lister recognized that the tenant had viable claims against J.A., he told her that the tenant "didn't have a leg to stand on" with the complaint.

¶ 34. J.A. also had affirmative claims against the tenant because the tenant was approximately $1500 behind in rent payments, and had left the apartment in a messy condition, requiring J.A. to incur extraordinary cleaning expenses.

¶ 35. Attorney Lister failed to file any response to the complaint within the required 45–day period. The tenant subsequently moved for a default judgment against J.A. At that point, Attorney Lister filed an untimely answer and counterclaim, paid a $72 jury fee, and served interrogatories and requests for admission on the tenant's counsel.

¶ 36. Attorney Lister told J.A. that he required a $500 retainer. J.A. paid $200 of that amount initially. After filing the untimely answer, Attorney Lister sent J.A. a bill for the balance of his fees.

¶ 37. A few days later the circuit court issued a default judgment in the amount of $11,637 against J.A. The tenant's counsel docketed the judgment on July 20, 2001. The tenant began calling J.A. about collecting on the judgment. J.A., in turn, called Attorney Lister on multiple occasions to inquire about the judgment. Attorney Lister told J.A. that there was no such judgment and that the tenant was lying to her.

¶ 38. In September 2001 J.A. sent a check for $372 to Attorney Lister for the balance on her account. This represented the remaining $300 in fees and the $72 jury fee that Attorney Lister had paid to the court when filing the untimely answer and counterclaim.

¶ 39. Because she remained concerned about the former tenant's claims of a judgment against her, J.A. had her daughter check the court's records. The daughter discovered the judgment in favor of the tenant.

¶ 40. Following the entry of the judgment, the tenant's counsel asked Attorney Lister to have his client provide a financial disclosure statement. Attorney Lister did not pass this information to his client. On October 30, 2001, the tenant filed a motion for remedial contempt due to J.A.'s failure to complete the necessary financial disclosure statement. The circuit court did not find J.A. in contempt, but did issue an order requiring her to appear for a supplemental examination. Attorney Lister then sent a letter to J.A. asking her to contact him about her case, but she did not receive the letter.

¶ 41. Attorney Lister ultimately signed an admission of service acknowledging that J.A. would appear for a supplemental examination. Attorney Lister did not inform J.A. of this fact. On the morning of the supplemental examination, Attorney Lister called J.A. and told her that she had to appear at the supplemental examination at 10 a.m. and had to bring a copy of her income tax return. Despite the lack of notice, J.A. did appear for the supplemental examination, which showed that she had no assets with which to satisfy the judgment.

¶ 42. After the supplemental examination, Attorney Lister told J.A. that he would immediately file a new action raising her claims against the tenant. Attorney Lister, however, took no action on J.A.'s behalf after the supplemental examination and did not file a new action. He did not even contact J.A., except to return her file to her.

¶ 43. When the OLR sent a copy of J.A.'s grievance to Attorney Lister, he did not respond within the

required 20–day time period. His secretary called the OLR after the expiration of that period to request an extension, but Attorney Lister did not respond within the extended period. After additional extension requests and still no response by Attorney Lister, the OLR filed a motion for a temporary suspension of Attorney Lister's license to practice law. Only after this court issued an order to show cause why his license should not be suspended did Attorney Lister submit an initial response to the grievance.

¶ 44. The OLR determined that Attorney Lister's response was not sufficient and asked for a supplemental response on certain points. Attorney Lister again asked for multiple extensions, but did not file the supplemental response. The OLR then had a process server personally serve a letter on Attorney Lister informing him that if he did not submit a supplemental response within five days, the OLR would again move for a temporary license suspension. At that point Attorney Lister finally filed the supplemental response.

¶ 45. Counts 8—13 in the complaint relate to this representation. The referee concluded that Attorney Lister had failed to provide competent representation, in violation of SCR 20:1.1, and had failed to act with reasonable diligence and promptness, in violation of SCR 20:1.3. The referee also determined that Attorney Lister had failed to keep his client reasonably informed about the status of the matter, contrary to SCR 20:1.4(a). Further, the referee found that Attorney Lister's failure to refund the more than $500 that had been received from J.A. but had not been earned constituted a violation of SCR 20:1.16(d).[7] Finally, the

---

[7] SCR 20:1.16(d) states: Declining or terminating representation.

341

referee concluded that Attorney Lister's failure to respond to the OLR's initial and subsequent requests for a response to the grievance and for additional information had violated SCR 22.03(2) and 22.03(6).[8]

¶ 46. Counts 14—18 of the complaint relate to Attorney Lister's representation of R.B., who had been involved in a boundary dispute and a dispute concerning a survey of his property for a number of years and had filed several lawsuits in the matter. In 1998, R.B. hired another attorney to file a lawsuit against a surveyor alleging that the surveyor had been negligent in conducting a 1993 survey and had improperly moved R.B.'s boundary lines. R.B.'s complaint sought damages, but not the return of any real property.

¶ 47. R.B. retained Attorney Lister in October 1999 to take over the case and paid an initial $2500 retainer. When the surveyor did not appear for trial, a default judgment for over $47,000 was entered in favor of R.B. The surveyor subsequently filed a motion to set aside the default judgment, arguing that an earlier action on this same subject matter had been dismissed with prejudice. The circuit court vacated the default

---

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[8] SCR 22.03(6) states that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance." A violation of SCR 22.03(6), like a violation of SCR 22.03(2), constitutes a violation of SCR 20:8.4(f).

judgment and granted judgment in favor of the surveyor. The court of appeals affirmed.

¶ 48. Attorney Lister concluded that the only claim that R.B. could still make on the matter was for removal or destruction of monuments under Wis. Stat. § 49.74 (2001–02).[9] On January 21, 2003, Attorney Lister wrote to R.B., enclosing a draft complaint and requesting a check in the amount of $464 to cover filing fees and service costs. R.B. sent the check to Attorney Lister. Attorney Lister did not file the action. Instead, he later applied the $464 check to R.B.'s past due account, without informing R.B. of that fact.

¶ 49. R.B. attempted to contact Attorney Lister on multiple occasions about his matter, but Attorney Lister did not respond. Finally, in May 2003 Attorney Lister called R.B., stated that he had forgotten about him, and said that he had gotten everything to the courthouse and would send copies of the filings to R.B.[10] Attorney Lister never filed a new action and did not send copies of anything to R.B.

¶ 50. Although the referee found that Attorney Lister had not filed the lawsuit despite receiving the check for filing fees, the referee also found that R.B. knew that he had to pay another retainer and enter into a new written representation agreement with Attorney Lister before he would file the new lawsuit. The referee found that, despite R.B.'s claims of having paid an additional $1000 cash retainer to Attorney Lister, R.B.

<hr>

[9] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[10] Attorney Lister initially denied this May 2003 conversation in his answer. When he responded to the OLR's requests to admit, however, he admitted this allegation. He continued to deny other allegations concerning purported statements to R.B. about having filed a new action on his behalf.

paid no such additional retainer and did not authorize Attorney Lister to file another lawsuit.

¶ 51. In addition, although the OLR's complaint alleged that Attorney Lister told R.B. in October 2003 that everything had been filed and they were simply waiting for a court date, the referee found that this conversation did not occur.

¶ 52. The referee also found, pursuant to an admission by Attorney Lister, that after R.B. finally checked the court records and determined that no new lawsuit had been filed, he filed a grievance with the OLR in December 2003 alleging that Attorney Lister would not return his telephone calls.

¶ 53. As was the case with other grievances, Attorney Lister did not respond to the OLR's requests for information. Finally, the OLR filed a motion for temporary suspension and this court issued an order requiring Attorney Lister to show cause why his license to practice law in this state should not be suspended for failing to cooperate with the OLR's investigation.

¶ 54. Attorney Lister filed a response with the OLR only after receiving the order to show cause. The OLR then withdrew its request for a temporary suspension, but requested additional information from Attorney Lister. Attorney Lister did not respond to the OLR's repeated requests for additional information over the next six weeks, including a letter personally served on Attorney Lister. Attorney Lister finally provided the requested information on May 14, 2004.

¶ 55. Although the referee found that R.B. was a poor witness, that a new lawsuit had not been filed because R.B. had not authorized it and had not paid a required additional retainer, and that Attorney Lister had not falsely told R.B. in October 2003 that everything had been filed, he nonetheless concluded that the

OLR had proven all of their claims of misconduct concerning the R.B. representation. Specifically, he found that Attorney Lister had not acted with reasonable diligence and promptness, in violation of SCR 20:1.3, and had failed to keep the client reasonably informed about the status of the matter, in violation of SCR 20:1.4(a). The referee further found that Attorney Lister had falsely told R.B. that he had filed the paperwork to begin a new lawsuit and was waiting for a court date, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[11] Finally, the referee concluded that Attorney Lister's repeated failures to provide information to the OLR about the subject of the grievance had violated SCR 22.03(2) and SCR 22.03(6).

¶ 56. With respect to the recommended level of discipline, the referee considered a number of mitigating and aggravating factors. On the mitigating side, he stated that Attorney Lister now limits his practice to areas where he feels more competent, has changed office procedures to ensure clients receive copies of pleadings and correspondence, has cooperated in the disciplinary proceeding by admitting most of the factual allegations, was found not to have engaged in misconduct on one of the counts alleged in the OLR's complaint, and refunded $500 to J.B. even though he had in fact earned the fee.

¶ 57. The referee, however, found more significant and numerous factors on the aggravating side of the ledger. First, the proceeding involves seven different grievances and 17 proven counts of misconduct.

---

[11] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Second, there are patterns of misconduct that appear throughout the seven representations under review. Attorney Lister often provided incompetent representation, failed to communicate adequately with his clients, neglected client matters, and failed to cooperate with the OLR's investigations. Third, these patterns of misconduct are similar to the misconduct that required a previous public reprimand of Attorney Lister. In addition, the referee stated that Attorney Lister should have known better because he has substantial experience as a practicing lawyer. The referee also noted that at least one of the clients had suffered a financial loss because of Attorney Lister.

¶ 58. In addition, the referee noted that Attorney Lister's defense during the disciplinary process indicated a lack of remorse and a failure to acknowledge the harm caused by his violations of the Supreme Court Rules. The referee first pointed to Attorney Lister's claim that he had failed to cooperate with the OLR simply because he was too embarrassed and too proud to do so. The referee also based this conclusion, however, on the fact that during the proceedings before the referee, Attorney Lister's counsel had moved (unsuccessfully) to disqualify Attorney Julie Falk of the OLR because she had previously worked for a firm that had been adverse to Attorney Lister in a contentious piece of litigation. The referee also found a lack of remorse from comments made during the disciplinary hearing, where Attorney Lister and his counsel asserted that Attorney Falk had made an incorrect factual statement during the heat of a hearing, just as Attorney Lister claimed to have done in the J.P. matter.

¶ 59. In the end, the referee recommended that this court suspend Attorney Lister's license to practice law in this state for 180 days. The referee concluded

that a suspension was warranted, but not a suspension of six months or more that would require a formal petition for reinstatement. See SCR 22.28(3).[12]

¶ 60. Attorney Lister's appeal challenges only the referee's conclusions of law with respect to Count 1 (knowingly false statement to tribunal), Count 16 (misrepresentation to client R.B.) and Count 18 (willful failure to provide information to OLR during grievance investigation), and the referee's recommended level of discipline. Thus, we accept the referee's findings of fact and his conclusions of law with respect to all of the other counts of misconduct.

¶ 61. Attorney Lister's first argument is that the referee erred in finding a violation of SCR 20:3.3(a)(1) in the J.P. matter. As noted above, SCR 20:3.3(a)(1) provides that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal." Attorney Lister claims that the OLR failed to prove by clear, satisfactory and convincing evidence that Attorney Lister knew his client's children had been listed as potential witnesses in the criminal action when he stated that they had not been so listed during a hearing on visitation in the divorce action. Attorney Lister claims that he was simply under a mistaken impression at that time, which does not constitute a knowing violation of the rule. He claims that he had not planned to argue at the visitation hearing concerning the "extensive" discovery in the criminal matter and was caught off guard by the statements of opposing counsel. While he admits that his statement was false, he argues

---

[12] SCR 22.28(3) states the "[t]he license of an attorney that is revoked or suspended for misconduct for six months or more shall be reinstated pursuant to the procedure set forth in SCR 22.29 to 22.33 and only by order of the supreme court."

that the referee's findings of fact do not support the legal conclusion of a false statement knowingly made to a tribunal.

¶ 62. In support of the referee's conclusion, the OLR points to the fact that the hearing was concerning whether J.P.'s children should be allowed to visit him while he was in jail awaiting trial and Attorney Lister was aware of statements allegedly made by J.P. to his son about the criminal charges, making the children's status in the criminal matter a likely topic of discussion. Moreover, the State's witness list in the criminal case sent to Attorney Lister a couple of months earlier had clearly named the children as potential witnesses. Further, the OLR emphasizes that Attorney Lister made an emphatic statement about having served "extensive discovery" on the State and the State not having listed the children as witnesses as of the date of the visitation hearing. The OLR points out that Attorney Lister repeated this contention multiple times and never indicated that he might be unsure of the fact because of the volume of paper in the criminal proceeding. Finally, the OLR notes that Attorney Lister's claim of a mistaken impression was deemed not credible by the referee.

¶ 63. Although we recognize that attorneys are human beings and sometimes make mistakes while making arguments in court, we agree with the referee's conclusion that there is sufficient evidence here to conclude that Attorney Lister knowingly made a false statement of fact to the court in violation of SCR 20:3.3(a)(1). The comment to that rule states in part that "an assertion purporting to be on the lawyer's own knowledge, . . . may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." This

explains the rule's concept of "knowingly" with respect to statements made to a tribunal.

¶ 64. Here, Attorney Lister made his statements not in response to a question by the court that caught him off guard, but as an affirmative, unsolicited argument in response to opposing counsel's suggestion that it might be better to delay allowing visitation until the children's relation to the criminal case was clarified. Attorney Lister emphasized that he had served "extensive discovery" on the State to bolster his subsequent assertion that the children had not in fact been listed as witnesses. He repeated his assertion multiple times. Although he now claims that there was a considerable amount of document production in the criminal matter, he never indicated to the court that he was unsure of his answer because of that fact. There is no indication that he ever checked the criminal file after the hearing to see if he had spoken in error. Instead he made a flat assertion purportedly based on his own knowledge that he did not condition in any respect. Moreover, the referee specifically stated that he found Attorney Lister's claim of a mistake made in the heat of battle to be not credible. Under these particular facts, we conclude that the record supports the referee's conclusion that Attorney Lister violated SCR 20:3.3(a)(1).

¶ 65. Next, Attorney Lister argues that the referee erred in concluding that Attorney Lister had violated SCR 20:8.4(c) by falsely telling R.B. that the new summons and complaint had been filed, as alleged in Count 16 of the OLR's complaint. Attorney Lister relies primarily on the referee's factual findings during the disciplinary hearing that R.B. was not a reasonable client or credible witness and that a new lawsuit had not been filed because R.B. knew he had to sign a new

349

written retainer agreement and pay a new retainer, but never did so. Thus, Attorney Lister argues that since the referee found that Attorney Lister was correct in asserting that there was never any agreement to file a new lawsuit, the referee should not have found that Attorney Lister lied about having filed the lawsuit.

¶ 66. Although we recognize that the referee stated that R.B. was "not a reasonable client, in general" and was "not a good witness," Attorney Lister's argument on this point ignores the fact that in response to a request to admit he conceded that in May 2003 he had "called [R.B.], informed him that he had forgotten about him, that Lister had gotten everything down to the courthouse, and would copy [R.B.] with the documents." Attorney Lister also admitted that he had not sent R.B. any copies of the documents allegedly filed at the courthouse.

¶ 67. This admission was the basis for the referee's conclusion of a violation of SCR 20:8.4(c). Although Attorney Lister had denied this same allegation in his answer to the OLR's complaint, for whatever reason he admitted it in his subsequent responses to the OLR's requests for admission. While we do not think repetitious requests to admit should be used in order to catch an adverse party in a mistaken admission, Attorney Lister never claimed that his admission had been a mistake and never moved to withdraw the admission before the referee. He did not do so even after the referee made a finding of fact based on his admission at the conclusion of the evidentiary hearing and made the other findings of fact about R.B.'s unreasonable expectations on which Attorney Lister now relies. Attorney Lister did not even seek to have the admission withdrawn when the referee concluded in his written report that Attorney Lister had violated SCR

350

20:8.4(c). At that point, given the referee's explicit finding that Attorney Lister had not had the October 2003 conversation with R.B., Attorney Lister should have recognized that the basis for the referee's conclusion that he had misrepresented having filed a new lawsuit to R.B. was his admission concerning the May 2003 statements. Nonetheless, Attorney Lister filed nothing to indicate to the referee that the factual basis for the SCR 20:8.4(c) violation was a mistake on his part.

¶ 68. Indeed, although Attorney Lister's briefs in this court attempted to undermine the referee's legal conclusion of a violation due to the referee's comments about R.B. not being a good witness, Attorney Lister never stated that his admission to the May 2003 conversation was a mistake. It was not until the court at oral argument asked Attorney Lister's counsel about the initial denial and subsequent admission of the May 2003 statements that counsel claimed that the admission had been a mistake. Counsel did not raise this issue on his own.

¶ 69. Attorney disciplinary proceedings are generally governed by the rules of civil procedure. *See* SCR 22.16(1).[13] The referee acts as the trial court and we perform our usual role as a reviewing court, with the exception that we determine the proper level of discipline independently of the referee.

---

[13] SCR 22.16(1) states: Proceedings before a referee.

(1) The referee has the powers of a judge trying a civil action and shall conduct the hearing as the trial of a civil action to the court. The rules of civil procedure and evidence shall be followed. The referee shall obtain the services of a court reporter to make a verbatim record of the proceedings, as provided in SCR 71.01 to 71.03.

¶ 70. Even if his admission of the May 2003 conversation was a mistake, Attorney Lister has foregone any opportunity to avoid the effect of that admission in this proceeding. Under Wis. Stat. § (Rule) 804.11, any matter that is admitted in response to a request to admit is conclusively established in the proceeding unless the trial court (here the referee) on motion permits withdrawal or amendment of the admission. The trial court may permit withdrawal "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits." Wis. Stat. § (Rule) 804.11(2). This determination is committed to the sound discretion of the trial court and this court's role (or that of the court of appeals in a civil action) is to review the lower court's ruling to determine if it properly exercised its discretion. *See Schmid v. Olson,* 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983).

¶ 71. Here, Attorney Lister never asked the referee to exercise his discretion and allow the withdrawal of the admission. Thus, we have no determination to review.

¶ 72. Moreover, Attorney Lister's argument on this point is that the conclusion of a violation of SCR 20:8.4(c) on the basis of the finding of the May 2003 statements is in conflict with the referee's statements that R.B. was "not a good witness" and that the October 2003 conversation did not occur. Even if the October 2003 conversation did not occur and Attorney Lister ultimately demanded the payment of an additional retainer before filing the new action on R.B.'s behalf, that does not mean that Attorney Lister could not have

falsely told R.B. in May 2003 that he had taken care of filing the new action in order to appease R.B.'s calls for progress on his matter.

¶ 73. Under these facts, we conclude that Attorney Lister's challenge to the conclusion of misconduct on Count 16 must fail. Attorney Lister's admission to the May 2003 conversation conclusively establishes in this disciplinary proceeding the factual predicate for the referee's legal conclusion of a violation of SCR 20:8.4(c).

¶ 74. Attorney Lister next argues that the referee erred in concluding that he had violated SCR 22.03(6) by willfully failing to provide relevant information and documents to the OLR during the investigation of the R.B. grievance. He asserts that although he did not provide the requested information in a timely manner, he ultimately did provide all of the requested information.

¶ 75. Attorney Lister's argument is without merit. SCR 22.03(6) states that an attorney's willful failure to provide relevant information to the OLR, to answer the OLR's questions fully, or to furnish documents to the OLR constitutes misconduct. Attorney Lister's argument is that an attorney can willfully choose not to provide the requested information for as long as the attorney wants, just as long as the attorney ultimately decides to provide the information. That undercuts the plain language of the rule and the need for the OLR to proceed with its investigations in an efficient manner. In the present case, Attorney Lister routinely delayed for months providing the information requested by the OLR. When the OLR requested additional information in the R.B. grievance investigation, after Attorney Lister had already received an order to

show cause why his license should not be temporarily suspended for failure to cooperate with the OLR, he continued his pattern of delay. He asked for extensions of time to respond, but never responded by the extended dates he had requested. Only when faced with the possibility of another motion for a temporary suspension of his license did he provide the requested information. The referee was correct in concluding that this conduct constituted a willful failure to provide information, in violation of SCR 22.03(6).

■

¶ 76. Attorney Lister also argues that he should not receive a suspension for the violations of SCR 22.03(2) because the OLR sought the temporary suspension of his license and subsequently withdrew its motion because of Attorney Lister's belated response to the OLR's grievance investigation. This argument is also without merit. The fact that the OLR concluded that it did not require a temporary suspension to induce Attorney Lister's cooperation does not mean that he should be absolved of his violations of SCR 22.03(2). As with his previous argument, this interpretation of the rules would encourage attorneys to delay responding to the OLR because they could avoid any penalties for their delay so long as the attorney responded before a temporary suspension was imposed. This is contrary to the rule's requirement that attorneys must respond to the OLR's initial request for information within 20 days.

■

¶ 77. Turning to the level of discipline, we determine that a five-month suspension of Attorney Lister's license is appropriate discipline. In this regard, we note that we generally have not issued 180–day license suspensions. The next more serious sanction after a

five-month suspension is a six-month suspension, which requires the formal reinstatement petition and procedure set forth in SCR 22.29—.33. When the facts have warranted a six-month suspension, we have imposed that discipline, regardless of the accompanying need for a formal reinstatement proceeding. *See, e.g., In re Disciplinary Proceedings Against Scanlan,* 2006 WI 38, ¶¶ 72–74, 290 Wis. 2d 30, 712 N.W.2d 877.

¶ 78. Here, it cannot be denied that Attorney Lister's misconduct, as proven during this proceeding, is serious. The evidence shows a disturbing pattern of failing to act diligently on his clients' behalf and of failing to communicate with them about the status of their matters. It also shows a failure by Attorney Lister to recognize that an attorney is obligated to cooperate with an OLR investigation in a timely fashion. Ultimately, however, the OLR has not disputed Attorney Lister's claim that he did provide, albeit in a tardy manner, all of the information the OLR requested. Moreover, although Attorney Lister has a prior reprimand for similar conduct, that reprimand occurred over 20 years ago and is the only discipline imposed on Attorney Lister during 30 years of practice.

¶ 79. Having considered all of the facts, we conclude that a five-month suspension is an appropriate level of discipline to impress upon Attorney Lister the serious nature of his misconduct and his need to conform his conduct to his obligations under the Rules of Professional Conduct.

¶ 80. With respect to restitution, the referee recommended that Attorney Lister be ordered to pay restitution to client J.A. equal to the default judgment entered against her plus the amount of money J.A. paid to Attorney Lister. At oral argument, Attorney Lister conceded that he should pay restitution to J.A. for those

amounts. Thus, we determine the amount of restitution to J.A. should be $12,209, which is the sum of the $11,637 default judgment and the $572 in payments that J.A. made to Attorney Lister.

¶ 81. We also determine that Attorney Lister should bear the full costs of this disciplinary proceeding. In this regard, Attorney Lister acknowledged at oral argument that his delay in responding to the OLR's requests for information, which necessitated the OLR's motions for the temporary suspension of his license, had increased the total costs of this proceeding.

¶ 82. IT IS ORDERED that the license of Ryan D. Lister to practice law in Wisconsin is suspended for a period of five months, effective June 15, 2007.

¶ 83. IT IS FURTHER ORDERED that Attorney Lister comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 84. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Lister shall pay restitution to J.A. in the amount of $12,209. If restitution to J.A. is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amount within that time, the license of Attorney Lister to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 85. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Lister shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Lister to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 86. IT IS FURTHER ORDERED that restitution to client J.A. is to be completed prior to paying costs to the Office of Lawyer Regulation.