# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP746-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Ryan D. Lister, Attorney at Law: |
| | Office of Lawyer Regulation,<br>            Complainant-Respondent,<br>        v.<br>Ryan D Lister,<br>            Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST LISTER

| | |
|---|---|
| OPINION FILED: | January 28, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there was a brief by *Ryan Lister*, Wausau.

For the complainant-respondent, there was a brief by *Robert G. Krohn* and *Roethe Pope Roethe LLP*, Edgerton.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP746-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings**
**Against Ryan D. Lister, Attorney at Law:**

**Office of Lawyer Regulation,**

   **Complainant-Respondent,**

 **v.**

**Ryan D Lister,**

   **Respondent-Appellant.**

**FILED**

**JAN 28, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license revoked.*

¶1   PER CURIAM.   Attorney Ryan D. Lister appeals a report rendered by the Honorable Robert E. Kinney, referee, recommending revocation of Attorney Lister's license to practice law in Wisconsin, imposition of costs, and restitution to the following:  Wisconsin Lawyers' Fund for Client Protection in the amount of $8,548.89; D.W. in the amount of $3,151.11; and A.B. in the amount of $100.00.  The referee found that Attorney Lister committed 34 of the 39 charged counts of misconduct.

¶2 We have considered Attorney Lister's arguments on appeal and find them unavailing. We approve the referee's findings of fact and conclusions of law. The referee's reasoning with respect to discipline and restitution is persuasive and we conclude that revocation of Attorney Lister's license to practice law in Wisconsin is appropriate in view of his extensive pattern of misconduct. We further agree with the referee that Attorney Lister shall bear the costs of this disciplinary proceeding, which are $28,200.86 as of December 18, 2014, and shall pay the restitution recommended herein.

¶3 Attorney Lister was licensed to practice law in Wisconsin in 1976 and has practiced in the Wausau area. In 1986, Attorney Lister was publicly reprimanded for unprofessional conduct which consisted of: neglect of a client's legal matters, in violation of former Supreme Court Rule (SCR) 20.32(3); failure to carry out a contract of employment with a client, in violation of former SCR 20.35(1)(b); and conduct constituting misrepresentation, in violation of former SCR 20.04(4). In re Disciplinary Proceedings Against Lister, 127 Wis. 2d 453, 380 N.W.2d 370 (1986).

¶4 Effective June 15, 2007, Attorney Lister's law license was suspended for five months for 17 counts of misconduct involving seven separate grievance investigations. The rules he violated relate to competence (SCR 20:1.1), diligence (SCR 20:1.3), keeping a client informed (SCR 20:1.4(a)), failure to cooperate with an investigation (SCR 22.03(2) and (6)), false

2

statements to a tribunal (SCR 20:3.3(a)(1)), failure to refund advance fee payments (SCR 20:1.16(d)), and dishonesty and/or misrepresentation (SCR 20:8.4(c)). *In re Disciplinary Proceedings Against Lister*, 2007 WI 55, 300 Wis. 2d 326, 731 N.W.2d 254.

¶5 Effective October 4, 2010, Attorney Lister's law license was suspended for 60 days for four counts of misconduct involving one grievant. The rules he violated relate to diligence (SCR 20:1.3), keeping a client informed (SCR 20:1.4(a)), failure to forward the client's file to successor counsel and refund advance fee payments (SCR 20:1.16(d)), and failure to cooperate with an investigation (SCRs 21.15(4), 22.03(2), and 22.04(1)). *In re Disciplinary Proceedings Against Lister*, 2010 WI 108, 329 Wis. 2d 289, 787 N.W.2d 820.

¶6 In 2012, the Office of Lawyer Regulation (OLR) was required to seek enforcement of this court's previous orders based on Attorney Lister's knowing and intentional failure to obey orders to make restitution payments to an injured client. In re Disciplinary Proceedings Against Lister, 2012 WI 102, 343 Wis. 2d 532, 817 N.W.2d 867.

¶7 That brings us to the matter now before this court. On April 2, 2013, the OLR filed a complaint against Attorney Lister, as amended September 19, 2013, alleging 39 ethical violations related to multiple client matters. This court appointed Referee Kinney, who presided over the disciplinary proceeding and conducted an evidentiary hearing on January 20

3

and 21, 2014. Following the hearing, the OLR moved for and the referee granted dismissal of four of the alleged counts (Counts 1, 3, 12, and 29), so they are not discussed in this opinion.

¶8 On June 13, 2014, the referee filed a report and recommendation, finding violations of all but one of the remaining counts and recommending that this court revoke Attorney Lister's license to practice law.

¶9 Shortly after the report was filed, Attorney Lister filed a motion to supplement the record and for reconsideration, citing incidents that occurred after the evidentiary hearing. The referee denied Attorney Lister's motion on July 2, 2014. This appeal followed.

¶10 We first consider Attorney Lister's appeal from the referee's decision denying Attorney Lister's request to supplement the record and for reconsideration. The pending complaint contains allegations relating to Attorney Lister's representation of J.T., alleging, inter alia, that Attorney Lister and J.T. commenced a sexual relationship while J.T. was his client. Attorney Lister acknowledges that he had a serious relationship with J.T., but he disputes that it commenced when she was a client. At the time of the January 2014 evidentiary hearing, the relationship had ended and it is clear that relations between the two had soured. J.T. testified extensively against Attorney Lister. Attorney Lister strongly challenged J.T.'s credibility, claiming that after the parties separated, J.T. subjected him to harassing behavior.

4

¶11 Shortly after the referee's report issued, Attorney Lister filed the motion claiming an incident had occurred in which J.T. "made serious, false criminal allegations against [Lister]" eliciting a police call. Attorney Lister asserts that the allegation was completely false and was intended only to harass him. Attorney Lister sought to reopen the disciplinary matter and supplement the record with this evidence on the grounds that it bears on J.T.'s credibility. Attorney Lister also sought reconsideration, advising the referee that another former client, A.P., had, since the date of the evidentiary hearing, entered a "no contest" plea in a criminal matter, a fact Attorney Lister deemed relevant to A.P.'s credibility. The referee denied the motion, citing the need for finality in this litigation.

¶12 Attorney Lister appeals, contending that the referee's decision was an erroneous exercise of discretion. We disagree. The referee was well aware when he rendered his report that Attorney Lister and J.T. had a contentious relationship following their break-up. The referee was also well aware that the cornerstone of Attorney Lister's defense to the allegations involving J.T. was his challenge to J.T.'s credibility. The alleged incident with J.T. occurred months after the evidentiary hearing ended and after the referee filed his report and recommendation. Moreover, Attorney Lister's affidavit was unsupported by other documentation such as a police report, criminal complaint, or conviction record. It was not a misuse of discretion to reject this "new" information.

5

¶13 Similarly, it is hard to imagine how A.P.'s criminal conviction for drug trafficking, occurring after the evidentiary hearing, would have made a difference in the referee's report. The referee was well aware that A.P. had a criminal record at the time of the evidentiary hearing. The referee was wholly within his discretion to deny both Attorney Lister's request to supplement the record and his request to reconsider the report.

¶14 We turn to Attorney Lister's appeal from the findings and conclusions stated in the referee's report. Attorney Lister's appellate brief[1] focuses on the findings and recommendations relating to three client matters: A.P., D.W., and J.T. This court will adopt a referee's findings of fact unless they are "clearly erroneous." In re Disciplinary Proceedings Against Charlton, 174 Wis. 2d 844, 874, 498 N.W.2d 380 (1993); In re Disciplinary Proceedings Against Swartwout, 116 Wis. 2d 380, 382, 342 N.W.2d 406 (1984). We review the referee's conclusions of law de novo. In re Disciplinary Proceedings Against Hetzel, 118 Wis. 2d 257, 259, 346 N.W.2d 782 (1984), cert. denied, 469 U.S. 857, 105 S. Ct. 186 (1984); In re Disciplinary Proceedings Against Norlin, 104 Wis. 2d 117, 122, 310 N.W.2d 789 (1981).

---

[1] Attorney Lister filed an appellate brief but did not file a reply brief. After the court denied his request to postpone oral argument, scheduled for December 4, 2014, Attorney Lister opted to forego oral argument and rely solely on his brief.

6

Matter of A.P. (Counts 1-8)[2]

¶15 Attorney Lister contends that the OLR failed to prove he committed ethical violations in his representation of A.P. In 2009, A.P., who was incarcerated, hired Attorney Lister to explore possible sentence modification. Throughout 2009, A.P. repeatedly wrote to Attorney Lister, asking about the status of his case. Attorney Lister failed to respond to these letters. Attorney Lister did inform A.P. that he had talked with a Forest County District Attorney about an agreement regarding possible sentence reduction. The amended complaint alleges that this was misrepresentation because, in fact, the district attorney was not willing to negotiate; indeed, he apparently told Attorney Lister that if A.P. successfully withdrew his plea, other criminal charges could ensue. In November 2009, A.P. asked Attorney Lister to withdraw as A.P.'s attorney and to refund his fee. Attorney Lister failed to either respond or return legal fees. During the ensuing disciplinary investigation, the OLR repeatedly requested written responses from Attorney Lister and Attorney Lister failed to timely respond. When he did respond, he misrepresented several facts to the OLR and to the OLR's assisting District Committee.

¶16 The referee considered the evidence and determined that Attorney Lister:  failed to communicate with A.P. (Count 2); failed to respond to the client's requests that

---

[2] No party appealed the referee's dismissal of Counts 1 and 3, so they are not discussed further.

Attorney Lister withdraw, return all legal fees paid, and send the client's file to his new attorney, and also failed to submit the fee dispute to binding arbitration with the Wisconsin State Bar (Count 4); misrepresented to his client whether the district attorney was willing to consider some sort of deal (Count 5); failed to cooperate with the OLR (Count 6); and misrepresented several facts to the OLR (Count 7) and to the District Committee (Count 8).

¶17 Attorney Lister's appellate brief focuses primarily on a factual dispute as to how often Attorney Lister met with the district attorney concerning the A.P. matter. He contends that his own testimony, coupled with that of other witnesses, proves that when Attorney Lister told his client, A.P., that he was in Forest County, Attorney Lister was, in fact, in Forest County. He asserts that, to the extent the district attorney refutes Attorney Lister's testimony, the district attorney is not credible.

¶18 The record reflects that the referee carefully considered Attorney Lister's proffered proof, including CCAP records, correspondence, and emails, and determined that the real issue was not the number of meetings Attorney Lister had with the district attorney but whether Attorney Lister misrepresented the district attorney's comments to A.P. The referee determined, unequivocally, that Attorney Lister misrepresented the district attorney's position on a possible sentence reduction and concluded that the OLR had established the other alleged violations as well.

¶19 Although Attorney Lister argues that the referee failed to give adequate weight to his evidence, the referee clearly weighed the credibility of Attorney Lister's testimony and found it wanting. We will not reassess Attorney Lister's credibility. We conclude that the record supports the referee's findings and conclusions pertaining to A.P. and we accept them. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747.

Matter of D.W. (Counts 15-25)[3]

¶20 Attorney Lister also challenges the referee's findings and conclusions pertaining to his representation of D.W. In April 2008, D.W. retained Attorney Lister to represent him in an ongoing property dispute pending in Marathon County. D.W. paid Attorney Lister $2,000 or $2,500 in cash as advanced fees. There was no written fee agreement and D.W. received no receipt. Notably, Attorney Lister was aware that D.W had a history of fairly severe depression and anxiety and had sustained a heart attack and a stroke.

¶21 In June 2010, the Marathon County case settled. D.W. was entitled to receive settlement money from the defendant's title insurance company and from the defendant. Each party was to pay $200 to the mediator, and D.W. also owed disbursements to a court reporter and for certain other court services.

---

[3] The referee dismissed Count 15 (alleging that Attorney Lister failed to actively pursue collection of a due and owing balance from the defendant). The OLR does not appeal the dismissal of this count and it will not be discussed further.

¶22 For more than a year and a half, Attorney Lister failed to give D.W. his settlement funds, despite numerous requests. Meanwhile, Attorney Lister issued a number of checks to himself, in excess of attorney fees he was owed. Eventually, D.W. was forced to hire another lawyer to try to help him recover his settlement money.

¶23 Based on his findings, the referee concluded that Attorney Lister: failed to prepare a written fee agreement after receiving advanced fees (Count 16); failed to hold in trust D.W.'s settlement funds, while issuing checks to himself in amounts that exceeded the balance of any remaining legal fees (Count 17); failed to deliver to D.W. the balance of the settlement funds for a period of over one and a half years (Count 18); failed to timely deliver the mediation fee to the mediator (Count 19); failed to report a payment to the mediator or show balances following each transaction in the client ledger maintained for D.W. (Count 20); failed to respond to the OLR's requests for information about the grievance filed by D.W. (Count 21); stated to the OLR that he had paid the court reporter and expert from the settlement proceeds, though his account records did not reflect such payments (Count 22); made numerous transactions from his client trust account between July 2010 and December 2011 (Count 23); made numerous deposits into his client trust account without including the proper identifying information on the deposit slips, and made numerous withdrawals without including the proper identifying information

in the memo line (Count 24); and issued a check from his client trust account to one of his office employees (Count 25).

¶24 On appeal, Attorney Lister focuses on the allegation that he failed to give D.W. his settlement funds. He claims that D.W. told Attorney Lister not to disburse any funds because D.W. disagreed with certain disbursements owed to a court reporter and other court service providers. Attorney Lister admits that he violated trust account rules, but suggests that "said violation does not rise to the sanctions requested by the Referee in this matter." The referee's thorough and careful analysis of this issue belies Attorney Lister's claims. The referee found that months and years passed before D.W. ever received his settlement proceeds, and he received the proceeds only after he was forced to retain the services of another attorney to collect them. Moreover, Attorney Lister pocketed money that should have otherwise gone for incurred expenses or returned to the client. The record supports the referee's findings and conclusions pertaining to Attorney Lister's representation of D.W. and we adopt them.

Matter of J.T. (Counts 34-38)

¶25 Attorney Lister also challenges the allegations concerning his representation of J.T. In 2005, J.T. retained Attorney Lister to handle her divorce case and a pending disorderly conduct charge. The two commenced a romantic relationship that lasted several years. In February 2009, J.T. was cited for a traffic violation in Kansas. She appealed, requiring her to file briefs in the Kansas Court of Appeals.

11

Attorney Lister was not admitted to the practice of law in Kansas and was not admitted to practice in Kansas on a pro hac vice basis. The amended complaint alleged and the referee found that Attorney Lister helped J.T. write and file the briefs with the Kansas court. The amended complaint further alleged and the referee found that throughout his representation of J.T., Attorney Lister permitted her to be alone in his office, and disclosed details of other client matters to her.

¶26 After the Kansas case ended, J.T. wrote to Attorney Lister on numerous occasions asking for documents from her case file. Attorney Lister failed to respond to her requests or provide the documents requested. The OLR eventually referred the matter to a District Committee. Attorney Lister repeatedly failed to timely respond to inquiries from the District Committee, and when he did finally respond, he failed to provide the information and/or documents requested.

¶27 Based on these facts, the referee concluded that Attorney Lister: revealed client confidences to J.T. (Count 34); engaged in a sexual relationship with J.T. while she was a client (Count 35); failed to provide the client's file in the Kansas case upon termination of his representation for a period of over two years and as repeatedly requested by the client (Count 36); engaged in the unauthorized practice of law by writing and submitting a brief on behalf of J.T. to a court in Kansas without seeking admission pro hac vice (Count 37); and failed to respond to seven inquiries from the OLR District Committee investigator (Count 38).

12

¶28 On appeal, Attorney Lister maintains that his relationship with J.T. started after all the legal work ended. He denies writing the Kansas briefs for J.T., claiming that J.T. did the work herself. He reiterates claims he made at the evidentiary hearing that after the relationship ended, J.T. pursued Attorney Lister and engaged in harassing and surveillance type behavior. His appeal from the findings and conclusions related to J.T. is predicated on his assertion that J.T. is not credible.

¶29 Our review of the record and the referee's report reflects the referee's careful and thorough analysis of the evidence. In particular, the dispute as to the precise timing of Attorney Lister's intimate relationship with J.T. was scrutinized by the referee. The referee found that the relationship began in January of 2006, as J.T. described, and that Attorney Lister was representing her in her divorce at the time the relationship started.[4] The report is also replete with commentary as to the referee's assessment of the credibility of J.T. and that of Attorney Lister. The referee deemed J.T. credible in her testimony. As to Attorney Lister, the referee observed:

> The Respondent would like to portray himself as a person who helps the poor and downtrodden, who oftentimes works on a pro bono basis, and who puts the

---

[4] The referee found that the relationship lasted three to three and a half years and encompassed the time period during which Attorney Lister represented J.T. on more than one matter.

interests of his clients before his own. To the contrary, in the cases that are the subject of this proceeding, the Respondent has shown himself to be a dishonest manipulator of the weak, unsophisticated and vulnerable, all of whom he willingly exploited for his own advantage.

We defer to the referee's clearly stated and well supported credibility determinations. We are not persuaded that the referee's conclusions of law are clearly erroneous and we accept the referee's findings and his conclusions pertaining to the matter of J.T.

Other Misconduct

¶30 Attorney Lister's appellate brief focuses on the three client matters discussed above, but the OLR's amended complaint alleged and the referee concluded that Attorney Lister committed some 13 additional ethical violations involving a number of additional clients.

¶31 A number of the disciplinary charges filed against Attorney Lister involve his failure to cooperate with the OLR.[5] In his appellate brief, Attorney Lister peripherally challenges these findings and conclusions. He attempts to deflect and minimize responsibility for his noncooperation but ultimately offers no meaningful defense to the multitude of noncooperation

---

[5] The OLR alleged that Attorney Lister failed to cooperate with the OLR in Counts 6-8, 11, 14, 21-22, 26, 28, 33, and 38-39 of the amended complaint. In some cases, the OLR alleged that Attorney Lister committed ethical misconduct in addition to his failure to cooperate with the OLR. In others, the OLR did not find cause to proceed on certain grievances, but alleged that Attorney Lister violated ethical rules by failing to cooperate with the OLR investigation of those client grievances.

charges, all deemed by the referee to have been proven. We accept the referee's findings and conclusions pertaining to these matters.

¶32 Attorney Lister has not appealed the referee's conclusion that he committed misconduct in several other matters, which are briefly summarized.

Matter of A.B. (Counts 9-10)

¶33 With respect to Attorney Lister's representation of A.B., the amended complaint alleged and the referee agreed that Attorney Lister failed to deposit a $100 check for filing and service fees into his client trust account, instead depositing it into his law firm's business account (Count 9), and then failed to refund the $100 cost advance for filing and service fees that were never incurred (Count 10).

Matter of P.T. (Count 11)

¶34 In May 2010, P.T. hired Attorney Lister to represent him in a Marathon County misdemeanor case. P.T. subsequently filed a grievance with the OLR against Attorney Lister. This grievance did not result in misconduct charges. However, the amended complaint alleged and the referee found that Attorney Lister failed to respond to multiple requests for information from the OLR as it sought to investigate this matter.

15

Matter of T.A. (Counts 12-14)[6]

¶35 The amended complaint alleged and the referee concluded that Attorney Lister failed to return a client file upon request, and did so only after two requests were made by the client's new attorney (Count 13), and also failed to respond to repeated requests for information from the OLR (Count 14).

Matter of H.V.N. (Count 26)

¶36 A former client, H.V.N., filed a grievance with the OLR against Attorney Lister. This grievance did not result in misconduct charges. However, the amended complaint alleged and the referee found that Attorney Lister failed to respond to multiple requests for information from the OLR as it sought to investigate this matter.

Overdraft Violations (Counts 27-28)

¶37 The amended complaint alleged and the referee concluded that Attorney Lister failed to file an overdraft notification agreement for his trust account with the OLR, despite repeated requests from the OLR (Count 27), and then failed to timely respond to the OLR's requests for information pertaining to this issue (Count 28).

---

[6] The referee dismissed Count 12 and no party appealed this decision. It is not discussed further.

16

Matter of B.S. (Counts 29-33)[7]

¶38 With respect to his representation of B.S., the amended complaint alleged and the referee concluded that Attorney Lister: failed to accomplish service of a summons and complaint on behalf of his client, resulting in the court's dismissal of the lawsuit, reflecting a lack of competent representation and a lack of diligence (Count 30); failed to respond to his client's requests for information regarding the status of his case (Count 31); failed to prepare a written fee agreement when he began representation of B.S. on a contingent fee basis (Count 32); and failed to timely respond to the OLR's requests for information (Count 33).

Matter of Mr. and Mrs. E. (Count 39)

¶39 No formal charges resulted from a grievance filed against Attorney Lister by Mr. and Mrs. E. However, the amended complaint alleged and the referee found that Attorney Lister failed to respond to multiple requests for information from the OLR as it sought to investigate this matter.

¶40 The facts of record support the referee's findings and demonstrate that Attorney Lister committed each of the 34 counts of professional misconduct determined by the referee.

¶41 After making a determination that Attorney Lister committed misconduct with respect to the 34 counts summarized above, the referee evaluated the appropriate discipline for

---

[7] Count 29 was dismissed by the referee and no party appealed this decision. It will not be discussed further.

Attorney Lister, recommending revocation. On appeal, Attorney Lister argues that a public reprimand is sufficient. Attorney Lister's opinion is apparently based on the notion that "none of the alleged actions by Attorney Lister were criminal in nature."

¶42 We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefitting from it. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686. After careful consideration of the report and recommendation and the record in this matter, we accept the referee's recommendation for revocation. The scope and severity of the misconduct committed in this matter, Attorney Lister's extensive disciplinary history, and the numerous aggravating factors warrant revocation.

¶43 The 34 proven counts in the OLR's amended complaint range from conversion of client funds to having engaged in an impermissible sexual relationship with a client. Attorney Lister habitually refused to cooperate with the OLR, failed to keep clients reasonably informed, and has breached client confidences. Moreover, as the referee observed, this proceeding is the latest in "a disturbing pattern of misconduct that has extended over many years."

¶44 Attorney Lister's significant disciplinary history includes a 60-day suspension in 2010, a five-month suspension in 2007, and a court-ordered public reprimand in 1986. In addition, in 2012 he was the subject of an enforcement proceeding for intentionally failing to pay court-ordered

18

restitution. Moreover, a number of aggravating factors are present. In addition to the significant disciplinary history noted, Attorney Lister's conduct reflects a dishonest or selfish motive; multiple offenses; intentional violation of the rules; submittal of false information to the OLR; refusal to acknowledge the wrongful nature of his conduct; and vulnerable clients.

¶45 As the referee observed, Attorney Lister "has shown himself to be a dishonest manipulator of the weak, unsophisticated and vulnerable, all of whom he willingly exploited for his own advantage." The record wholly supports the referee's recommendation for revocation.

¶46 Concerning monetary sanctions, we agree with the referee's recommendation that Attorney Lister be ordered to pay restitution as follows: Wisconsin Lawyers' Fund for Client Protection ($8,548.89), D.W. ($3,151.11), and A.B. ($100.00). Attorney Lister does not dispute the referee's restitution recommendation and we award restitution accordingly.

¶47 We further conclude that full costs in the amount of $28,200.86 are to be imposed on Attorney Lister. Attorney Lister does not argue that there are extraordinary circumstances here that would justify a departure from the court's standard practice of imposing full costs against the respondent attorney. See SCR 22.24(1m).

¶48 IT IS ORDERED that the license of Ryan D. Lister to practice law in Wisconsin is revoked, effective February 27, 2015.

19

¶49 IT IS FURTHER ORDERED that within 60 days of the date of this order, Ryan D. Lister shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $28,200.86 as of December 18, 2014.

¶50 IT IS FURTHER ORDERED that within 60 days of the date of this order, Ryan D. Lister shall pay restitution as follows: Wisconsin Lawyers' Fund for Client Protection ($8,548.89), D.W. ($3,151.11), and A.B. ($100.00).

¶51 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶52 IT IS FURTHER ORDERED that, to the extent he has not already done so, Ryan D. Lister shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.